Ruffin, C. J.
 

 The court could not help being struck with the novelty of this proceeding, which seems to be an attempt to try the validity of the defendant’s marriage in this ejectment, and appears to us not an appropriate method of doing so. On the one hand it is substantially a suit at law by the husband against the wife. If, on the other hand, the defendant supposed, that as the wife of the lunatic she had
 
 *391
 
 a right to continue her residence on the land in opposition to the guardian’s disposition of the premises, she is mistaken. It is true, as we think, that the wife and children oí a lunatic are entitled to maintenance out of the estate, according to their circumstances, after providing properly for the lunatic, The statute
 
 de prerogativa regis.
 
 17 Ed. 2, ch. 10, which provides that lunatics “ and their household” shall live and be maintained competently from the issues of their estates, has not indeed been re-enacted here; and for that reason our courts may not be authorized to extend the allowance to collateral relations or to advancements to married children, as is done in England.
 
 In re Cotton
 
 and
 
 in re Hinde,
 
 2 Mer. 99. But the wife and children, constituting the lunatic’s family and houséhold, are entitled to maintenance, upon the principle that the lunatic is bound in law to provide for those persons, and, therefore, it is a iair charge on the income of the property. Yet it will not do for those persons to assert their claims in this way. A reasonable allowance by the guardian would no doubt be sanctioned by the court. But it would be safest for one of the parties to apply, in the first instance, by petition to the Court of Equity for an order. It seerr.s, however, anomalous and needless — if it can be done — to institute a suit at law against the lunatic’s wife and household, in order to let the committee into the management of the estate. A more direct and less expensive mode seems to be, to apply to the chancellor on petition to make an order on those persons, not to injure the estate nor obstruct the committee in the execution of his duties; for a breach of which they will incu'r a contempt.
 
 In re Hallock, 7
 
 John. ch. Ca. 24. But we do not pursue the subject further; for whether ejectment can be maintained against the lunatic’s wife, or, if not, whether the defendant presented that point in the proper manner, need not be decided in this case ; since, upon another point, the opinion of the^court is decisively against the action.
 

 The action is brought on the demise of the guardian; and, upon a point reserved as to the propriety of such a demise, the court held that it could not be maintained, and gave
 
 *392
 
 judgment for the defendant. Of that opinion is this court also; not that it makes any difference whether Alexander Brooks is or is not named in his style as guardian, but that , ... ... .... he cannot m either manner make a demise to try the title in ejectment. That this was so at the common law, was admitted in the argument. The reason is, that the demise in ejectment must be made by the person who has the estate and could enter to make the lease ; for, originally, the lease was made on the premises, and yet the question on the trial is as to his right to enter and there make the lease. But the committee of a lunatic had not the right of entry, as an estate in the land, nor any interest therein, nor any power over it, except as the mere bailiff of the sovereign, acting under the directions and control of the chancellor, and dischargea-ble at his pleasure. And even if the chancellor made an order, under which the committee leased, the legal title did not pass. These doctrines are stated in the case of
 
 Knife
 
 v
 
 Palmer, 2
 
 Wils. 130; and their correctness is unquestionable. The inconveniences resulting from this state of the law produced in England several statutes, 43 Geo. 3, c. 75, and others subsequently, to give the chancellor power to order committees to make leases, and making the leases, when executed, valid conveyances at law. But it is obvious, that under these statutes the nature of the office and rights of the committees in the estate are not altered. He still has the management of the estate barely, with
 
 a power
 
 to make leases in certain cases. But nobody supposes that a power to lease enables one, who has the power, to bring ejectment lor the land. The power is not the legal title, though, when executed, it passes that title; but the person taking the conveyance does not derive title under him, who executed the power, but under him who created it, as is exemplified in conveyances under a letter of attorney. Therefore, at this day in England, the committee cannot maintain ejectment on his own demise, although his lease, actually made under the direction of the chancellor, there passes the legal estate to the lessee.
 

 
 *393
 
 The same law, we think, holds here; and ¡his is rily so, unless it has been altered by statute.
 

 On the part of the plaintiff it has been contended, that the law has been changed on this point by the acts, ch. 54, and ch. 57 of the Revised Statutes. That on “Guardian and Ward,” ch. 54, s. 9, requires the guardian of an infant to take into possession the estate of his ward, and enacts “that he may bring such actions in relation thereto, as by law a guardian in common socage might do.”- Upon this we admit, that a guardian under the statute may bring ejectment on his own demise; because it is well known that a guardian in socage could. But it does not follow, that this statute means that an orphan’s guardian may bring ejectment upon a mere authority and without an interest in the land ; but, on the contrary, it imports that the necessary estate is given to the guardian under the statute to maintain the action, as at common law the guardian in socage had. Then follows the act concerning “Idiots and Lunatics.” ch. 57, which, after authorizing the County Courts-to appoint guardians, enacts that “such guardians shall continue during the pleasure of the court, and shall have the same powers to all intents and purposes, as guardians of orphans.” Upon this it was urged, that the guardian of a lunatic acquires the estate, as far as is necessary to bring ejectment, inasmuch as the guardian of an infant has it. But the court cannot accede to that inference. The act in its terms does not confer on a lunatic’s guardian “ the estate” or “ interest” of an infant’s guardian, but only the same powers
 
 f
 
 and we do not feel authorized to introduce so material an alteration in the
 
 rights
 
 of persons, without a plain legislative direction.— There is not only none such, but there seem several reasons tending to shew that no such change was intended. In the first place, the office, as at common law, is during the pleasure of the court, and not during the lunacy, nor even during good behavior
 
 •,
 
 which indicates that he was still regarded but as the bailiff. Again ; no useful purpose is answered by such a change in the law. We have no doubt but that the act gives the guardian the
 
 gower
 
 to make leases,
 
 *394
 
 without the previous sanction of the court, and that such leases are valid as legal instruments. That, we suppose, was the principal object of the act, together with vesting p0wer of appointment in the County Court, inasmuch as the terms of the Court of Equity rendered it impossible to obtain the requisite orders in every case, in which prompt action would be useful. Therefore this power was proper. But why should the law confer on the guardian an estate? If was intimated in the argument, that it was proper for the preservation of the estate, inasmuch as the action of ejectment cannot be maintained upon the demise of the lunatic himself, for the want of capacity to make a lease. But, of necessity, if the action cannot be brought on the demise of the committee, it must lie on that of the infant; else the estate would be open to all intruders, who would be dispun-ishable. And there is no incongruity in allowing the demise by the lunatic. In him is the estate; and the action being fictitious and designed to try the title, it may be so moulded by the court as to make it answer that purpose.' — . Therefore an actual lease to the plaintiff in ejectment is not requisite ; but one is supposed, if the person, by whom it is alleged to have been made, had the right and estate necessary to make it, and, when supposed the lease, the capacity also is supposed. For it is the right to make it, and not the fact whether it was made, that is in issue. But, in truth, it has long been held, that in no case can the committee maintain an action at law in his own name, but that “such action must be brought in the name of the
 
 non compos,
 
 whether it be trespass, ejectment, covenant, or of any other kind.”— Shelford on Lunacy, 395, and the authorities there cited.
 

 Per Curiam. Judgment affirmed.