JAMES McCARTHY vs. ISAAC B. HINMAN.

The act (General Statutes, tit. 50, sec. 19) which provides that any parent who shall abandon his minor child to be supported by the town, shall be deemed a pauper, and may be put under the restraint authorized in the case of paupers supported at public expense, is not unconstitutional, as conflicting with the provisions either of the state or United States constitution with regard to the security of the person.

A father obtained a divorce from his wife, agreeing at the time of the decree that A should be appointed guardian of his children, and that he would cause to be conveyed to them for their support a house which he owned and occupied of the value of $1,600, his wife withdrawing her opposition on that condition. After the divorce the house was conveyed to the children by a third person in whose name it stood by a quitclaim deed, but the father refused to give up possession, and further refused to contribute anything to their support unless the guardian would give up the children, and it became necessary that they should receive help from the town. Held that the town might lawfully under the statute take him into custody at the town alms-house as a pauper.

And held that it was not necessary for the town to first exhaust the remedies given by certain independent statutes, one of which (Gen. Statutes, tit. 13, secs. 40, 41,) provides for enforcing a contribution by both parents after a divorce for the support of their minor children, and the other (Gen. Statutes, tit. 50, sec. 40,) for enforcing a contribution by lineal relatives of a pauper, who are of sufficient ability, for the support of the pauper.

WRIT of Habeas Corpus, issued by the Superior Court in New Haven county against the respondent, who was keeper of the New Haven alms-house and as such held the petitioner in custody as a pauper. The court (*Granger, J.,*) sustained the return of the respondent and remanded the petitioner to his custody. The court having made a special finding of the facts and placed them upon the record, the petitioner brought the case before this court by motion in error. The facts of the case are sufficiently stated in the opinion.

*Wright* and *H. L. Harrison*, for the plaintiff in error.

*C. R. Ingersoll*, for the defendant in error.

CARPENTER, J. The petitioner, living separate from his wife, brought his petition for a divorce, praying for the custody of certain minor children, who at that time were in the

custody of the wife. She at first resisted the petition, but finally withdrew her opposition, the petitioner agreeing that the children should be placed in the custody of Alfred Daggett, Esq., as guardian, and that he would cause to be conveyed to them, for their support, a house and lot then owned and occupied by him, the title of which stood in a third person, and which was valued at about $1,600 above the encumbrances on it. The parties were divorced, and Mr. Daggett was appointed guardian of the children. The real estate was conveyed to the children by quitclaim deed by the person in whose name the title stood, but the father retained possession, taking the rents and profits to himself, and utterly refused to appropriate any portion of the same for the support of the children. In December 1868 the guardian applied to the selectmen of New Haven in behalf of the children for relief. It is found that they required relief at that time, and that the mother was not able to provide for their necessities. The town agent requested the petitioner to provide for them, but he refused to do so unless they should be taken from the mother and placed in his custody. The town supplied their wants, and thereupon treated the petitioner as a pauper, under the 19th section of the statute, page 621 of the General Statutes. The respondent, who was keeper of the almshouse, received the petitioner and held him as a pauper. The rules of the alms-house, which, so far as appears, are necessary and reasonable, require that its inmates at certain hours should be locked within the building.

Under these circumstances the petitioner applied to the Superior Court to be discharged on a writ of *habeas corpus.* The Superior Court refused to discharge him, and he brings the record before this court by motion in error.

Numerous errors are assigned in the motion, but two questions only are really involved in the case.

1. Is the statute, sec. 19, title 50, (Gen. Statutes, p. 621,) constitutional?

2. Is the petitioner within the provisions of that act?

We think both questions must be answered in the affirmative.

1. If the act in question is to be regarded as making it a crime or misdemeanor for a parent to abandon a minor child to be supported by the town as a pauper, and inflicting a penalty for such offense, then, so far as the act impliedly authorises the arrest and detention without due process of law, it would doubtless conflict with the constitution. But we do not think it was intended or designed for any such purpose, and are satisfied that it ought not to receive any such construction. The object of the statute is entirely different. The obligation resting upon towns to maintain the poor and indigent, is at best a burden; and although it ought to be, and usually is, cheerfully borne, yet it is reasonable and just that the burden should be lightened, so far as it may be consistent with the claims of humanity. Hence paupers, before and since the adoption of the constitution, have been subject to the orders of the selectmen, or person contracted with for their support, and provision has been very properly made to furnish employment for such as are able to labor, that thus they might, in some degree, contribute to their own support. Every man is morally bound to use, not only his property, but the avails of his labor, in support of his minor children; and if he fails to do so from any cause, and such children thereby become a public charge, we see no injustice or impropriety in allowing the public to avail itself of his property and labor to lessen the burden thus imposed upon it. It so happened, however, prior to the passage of this act, that a parent might, if so disposed, cause his children to be maintained at the public expense, while it was difficult, if not impossible, to prove, according to the rules of law, that he himself was a pauper. The fact that any member of his family had become chargeable tended to prove that he was a pauper, but it was not conclusive. The legislature interposed and said, virtually, that such evidence should be deemed conclusive. The act is a beneficial one, and operates to restrain the idle and vicious from imposing, unnecessarily, heavy burdens upon the public. Its operation, in a great majority of instances, though powerful, is silent; but it will occasionally happen that its effect will be to subject a person to the inconvenience of being treated as a

pauper. In such cases it may be, in a certain sense, penal in its consequences ; but we ought not for that reason to declare it inoperative. The clauses in the constitution of this state and of the United States, which it is claimed are infringed by this act, have reference to an entirely different class of cases, and have no application to the management of paupers by towns. If a person not within the provisions of the act is unjustly treated as a pauper, he has his remedy by an ordinary action at law, in which he has a right to a trial by jury, or he may resort to a more summary and expeditious remedy, and be discharged upon a writ of *habeas corpus*. In one or the other of these ways all his constitutional rights may be vindicated. If he is in fact a pauper, either at common law, or by force of the statute, no such rights are infringed, and he must submit to the inconveniences of his situation.

2. It remains for us to enquire whether the petitioner is within the provisions of the act. It is claimed that they do not apply to his case, because, by reason of the divorce, and of the decree giving the custody of the children to another, he does not stand in the ordinary and normal relation which a father usually occupies towards his minor children. The divorce itself does not affect the obligations of the parent to support his children. The reciprocal rights and duties of the parties remain the same as before the divorce. *Finch* v. *Finch*, 22 Conn., 417.

The fact that the children were in the custody of Mr. Daggett at the time does not affect the case. The petitioner voluntarily parted with his right to control their persons, and agreed to support them, at least so far as the property which was to be conveyed to them was sufficient for that purpose. It would seem that this agreement was the condition on which the wife abandoned her opposition to the bill of divorce. Having obtained that, and, so far as we know, upon the strength of his agreement, we are not prepared to say that he is at liberty to repudiate it. On the contrary we think, under the circumstances, that his refusal to support them unless the custody was given to him by the guardian, was equivalent to an absolute refusal.

The objection that the children had property, and therefore could not be treated as paupers, does not come with good grace from this petitioner. The property was in his possession, and by him withheld from the children. He had it in his power to make it immediately available for their relief; but refused to do so, notwithstanding their pressing wants. At an inclement season of the year he deliberately compelled them to resort to public charity for support. The court below found that they required relief, and that finding ought to be conclusive as against him. Whatever we might think of it as between other parties, we see no propriety in allowing him to withhold from the children property designed for their support, and at the same time insist that the authorities, before supplying their wants, shall institute legal proceedings against *himself* for the recovery of that property.

But it is said that the summary proceedings under section 19th should only be permitted after the remedies provided in sections 40th and 41st, title 13, and section 40th, title 50, of the General Statutes, and in chapter 128 of the acts of 1867, have been exhausted.

Section 19th seems to be wholly independent of the statutes referred to. Its force and validity are not, expressly at least, made contingent upon their failure to remedy the evil, and we see no ground for supposing that such was the intention of the legislature. Sections 40th and 41st, title 13, apply to questions of this nature arising between the parents after divorce, and do not apply to questions arising between the town and one of the parents. Section 40th, title 50, and the act of 1867, were designed to create and enforce a liability for the support of certain relations, where the parties were not liable before. Section 19th was designed to give a more expeditious and efficient remedy where parents violated natural as well as municipal law, by refusing to support their offspring.

On the whole we think the doors of the petitioner's prison are subject to his own control. He has but to obey the dictates of humanity and they open to him of their own accord.

Until he does so, he must bear the consequences of his own folly.

There is no error in the judgment of the court below.

In this opinion the other judges concurred.