J. E. LITTLETON v. JOHN HAAR.

(Filed 13 March, 1912.)

**Registers of Deeds—Parent and Child—Marriage License—Written Consent—From Whom Obtained—Interpretation of Statutes.**

The statute fixes the order in importance of those from whom the register of deeds should obtain the written consent for the marriage of minors under eighteen years of age (Revisal, sec. 2088) ; and when such minor resides with the father, which the register could reasonably have ascertained, the written consent of the mother only indicates that the subject of the application for the license is under the age specified, and is not a sufficient defense by the register to an action for the prescribed penalty. Revisal, sec. 2090.

APPEAL from *Ward, J.,* at December Term, 1911, of NEW HANOVER.

This case was heard in the Superior Court upon a case agreed, which is, in substance, as follows:

The defendant is Register of Deeds of New Hanover County, and on or about 27 December, 1910, issued a license for the marriage of Ednia Littleton, daughter of plaintiff, and, at the time, under eighteen years of age. Consent of the father to the marriage of his daughter was never given, but instead the written consent of her mother, Melia Littleton. At the time the mother's consent was given and the license was applied for and issued, the said Ednia Littleton was living in the home of her father and being supported by him.

The court, being of opinion, upon the facts stated, that the plaintiff was entitled to recover the penalty given by Revisal, sec. 2090, adjudged that he recover of defendant the sum of $200 and costs. Defendant excepted and appealed.

*George F. Méares for plaintiff.*
*A. G. Ricaud for defendant.*

WALKER, J., after stating the case: The Revisal, sec. 2088, provides that where either party to a proposed marriage is under eighteen years of age and resides with the father, or mother, or uncle, or aunt, or brother, or elder sister, . . . the register of deeds shall not issue a license for such marriage until the consent in writing of the relation with whom such infant resides, or, if he or she resides at a school, of the person by whom the minor was placed at school, "and under whose custody or control he or she is," shall be delivered to him, and the written consent shall be filed and preserved by the register. Section 2090 provides that a register of deeds who shall knowingly, or without reasonable inquiry, personally or by deputy, issue a license for the marriage of any two persons to which there is any legal impediment, or where either of the persons is under the age of eighteen years, without the consent required by law, shall forfeit and pay $200 to any parent, guardian, or other person standing *in loco parentis,* who shall sue for the same. These two actions are *in pari materia* and must, therefore, be construed together. *Bowles v. Cochran,* 93 N. C., 398.

We do not understand that the question of reasonable inquiry by the register as to the age of the applicant for license, or other impediment to the marriage, is involved in this case.

There is no suggestion in the record about it. The case agreed presents the single question, whether, upon the admitted facts, the written consent of the mother was sufficient to justify the issuing of a license. There is no controversy as to the age of the applicant, and the written consent of the mother would indicate at once that she was under eighteen years of age, as such consent is not required when the parties are over eighteen years of age. Our opinion is that the issuing of the license upon the written consent of the mother alone, and without the written consent of the father, was not a compliance with the statute. The consent of the persons named in the statute, and in the order named, should be obtained. If a child is not residing with its father, but is residing with its mother, then the written consent of the latter is sufficient, and so on with the others named. The father is considered in law as the head of the household and is entitled preferentially to the custody of his child, his right being superior to that of the mother. He is the child's natural guardian. 29 Cyc., 1588; *Ely v. Gammel,* 52 Ala., 584; *Donk v. Leavitt,* 109 Ill. App., 385; *Gates v. Renfroe,* 7 La. Ann., 569; *Bosworth v. Beiller,* 2 La. Ann., 293. In the case last cited, the Court said: "In case of differences between the parents as to the marriage of a minor child, the father's authority prevails." This, though, is but a general rule, and in its application, when a controversy arises between the father and mother as to the child's custody, the courts are governed by the interests of the child. We stated this principle in *Newsome v. Bunch,* 144 N. C., 15: "The father is, in the first instance, entitled to the custody of his child. But this rule of the common law has more recently been relaxed, and it has been said that where the custody of children is the subject of dispute between different claimants, the legal rights of parents and guardians will be respected by the courts as being founded in nature and wisdom, and essential to the virtue and happiness of society; still, the welfare of the infants themselves is the polar star by which the courts are to be guided to a right conclusion, and, therefore, they may, within certain limits, exercise a sound discretion for the benefit of the child, and in some cases will order it into the custody of a third person for good and

sufficient reasons. *In re Lewis,* 88 N. C., 31; Hurd on Habeas Corpus, 528 and 529; Tyler on Infancy, 276 and 277; Schouler on Demestic Relations, sec. 428; 2 Kent's Com., 205. But as a general rule, and at the common law, the father has the para-mount right to the control and custody of his children, as against the world; this right springing necessarily from and being incident to the father's duty to provide for their protec-tion, maintenance, and education. 21 A. and E. Enc., 1036; 1 Blackstone (Sharswood), 452 and note 10, where the authori-ties are collected. This right of the father continues to exist until the child is enfranchised by arriving at years of discre-tion, 'when, the empire of the father gives place to the empire of reason.' 1 Blk., 453." The case of *In re Turner,* 151 N. C., 474, is to the same effect, and in it we referred approvingly to the following language of *Chancellor Kent:* "The father, and on his death the mother, is generally entitled to the custody of the infant children, inasmuch as they are their natural pro-tectors, for maintenance and education. But the courts. of justice may, in their sound discretion and when the morals or safety or interests of the children strongly require it, withdraw the infants from the custody of the father or mother and place the care and custody of them elsewhere." See, also, *Latham v. Ellis,* 116 N. C., 30; *In re Lewis,* 88 N. C., 31; *Ex parte Alder-man,* 157 N. C., 507.

But it is not necessary that we should resort to the principle just considered in order to decide the question before us, ex-cept in so far as it may shed light upon the meaning of the statute. The case agreed shows, as we construe it, that the daughter was residing with her father, for it states that she was living in his home and was supported by him. The mother may also have been living in the same house and residing with her husband in his home, but, upon the facts stated, it cannot well be contended that her daughter was residing with her within the meaning and intent of the law. The language of the statute is plain, that if she is residing with her father, his written consent must be produced and delivered to the register before the license is issued; otherwise the officer incurs the penalty.

Construing a somewhat similar statute, it was said in *Riley v. Bell,* 89 Ala., 597: "The minor was a female, under eighteen years of age, and had never before been married. The statute, in such cases, provides that 'the probate judge must require the consent of the parents, or guardians of such minors, to the marriage, to be given either personally or in writing.' Code, sec. 2315. This obviously means the consent of the father, if he be living and is not rendered incapable of giving it by defect of understanding or other good cause; or, if there be no father, then of the mother. The basis of the statute is the common-law principle, that the father, and on his death the mother, is generally entitled to the custody of the children, and that, as parents, they are the natural protectors for maintenance and education. 2 Kent's Com., 205, 85-86. The father in this case was living, but at the time temporarily absent from the State. It is shown that the mother gave her written consent to the minor daughter's marriage. This was insufficient to meet the requirements of the statute, and did not exempt the defendant from liability to the penalty in question." If anything, the language of our statute more clearly and strongly calls for the same interpretation and requires the written consent of the father, if living and not unable or disqualified in some way to give it.

It was urged in the argument that this statute, being penal, should be construed strictly, but in *Coley v. Lewis,* 91 N. C., 21, with reference to a similar contention, the Court said: "While penal statutes must, in case of doubt, be strictly construed in their operation against others, a primary rule is to ascertain from the words used the intent of the enactment, and give such reasonable meaning as will prevent the mischief intended to be remedied and secure the ends the statute was intended to subserve." But even a strict construction leads us to the conclusion that there was no error in the judgment.

No error.