JULIA F. HOWELL v. J. N. SOLOMON.

(Filed 2 December, 1914.)

1. **Parent and Child—Support of Child—Willful Abandonment—Trials—Evidence—Burden of Proof.**

In an action against a father to recover for the support, tuition, etc., of his minor children furnished by their grandmother, the plaintiff, there was evidence in behalf of the defendant tending to show that the plaintiff took possession of his children against his will and prevented him from having access to them or performing his parental duty as to their support and maintenance, and had then voluntarily surrendered them to him; as well as evidence to the contrary. *Held,* the burden of proof was on the plaintiff to show that she supported and maintained the children, and on the defendant that he was prevented by plaintiff from performing the duty himself, and when the verdict of the jury has been rendered, under proper instructions from the court, in defendant's favor, the case does not fall within the meaning of Revisal, sec. 180, providing, that the parent shall be deemed to have forfeited all rights and privileges with respect to the care, custody, and services of his children whom he has willfully abandoned.

2. **Same—Contract Implied—Torts—Damages.**

Where a grandmother seeks to recover in an action against the father for the tuition, board, etc., of his minor children, and the jury by their

verdict, under proper instructions, have found that the plaintiff had deprived the defendant of their care and custody against his will during the time in question and should recover nothing, though ordinarily a recovery may be had as upon a *quasi* contract for services rendered, etc., the verdict will not be disturbed for the plaintiff will not be permitted to take advantage of her own wrong.

3. Evidence—Depositions—Agreements—Objections and Exceptions—Trials
   —Leading Questions—Court's Discretion.

   *Semble,* an agreement to waive all irregularities in the taking of depositions, and that they should be opened and read subject to objections and exceptions, does not confine the party thus agreeing to the objections and exceptions already noted in the depositions; but when it sufficiently appears that upon the trial the judge ruled upon the objections and exceptions then taken, exceptions to his not having done so cannot be sustained, especially when they relate chiefly to the leading character of the questions asked, which are directed to the sound discretion of the trial judge, and are not reviewable on appeal in the absence of its abuse.

4. Court's Discretion—Verdicts—Motions—Weight of Evidence.

   A motion to set aside a verdict of the jury as being against the weight of the evidence is addressed to the sound discretion of the trial judge, and in the absence of evidence of its abuse is not reviewable on appeal.

Appeal by plaintiff from *Hardin, J.,* at February Term, 1914, of Rowan.

This action was brought to recover, first, compensation for the support and maintenance of defendant's two children, Lucile Solomon and James E. Solomon, who are the grandchildren of the plaintiff, being the children of her deceased daughter, Cora (Howell) Solomon, as for money paid to the use of the defendant, and, second, to recover damages for wrongfully taking them from the custody of the plaintiff at Salisbury, N. C., and carrying them to Richmond, Va., where they now are, living in comfort and happiness with their parent.

With reference to the first cause of action, the court gave the following instructions, among others, to the jury:

"1. The obligation rests upon a parent to maintain and support his children, and it does not make any difference whether you find that this defendant abandoned his wife and children, or did not abandon them. If he went off in good faith because he could not stay at home, and left the home of his mother-in-law, it did not relieve him of his responsibility of maintaining and providing for his children, and it was his duty to provide for them as best he could out of the maintenance and support he got. The law does not require that he should maintain and support his children in a style of life that he is not able to support them in, but that he should give them reasonable support and maintenance for the station of life in which they lived, provided he is able to do so.

"2. If you find from the greater weight of this evidence that the defendant failed, during the years from 1901 to 1911, to maintain and support his children, whether he abandoned them or did not abandon them, and that the plaintiff maintained and supported the children during the ten years, then the plaintiff would be entitled to recover of the defendant what you shall find is a reasonable amount for clothing and food, and such reasonable incidental expenses, such as medical bills, school books, and things of that kind that were reasonably necessary for the maintenance and comfort of those children in the station of life in which they were being reared."

The court then instructed the jury that if they found that plaintiff did not prevent the defendant from performing his duty to the children by her own misconduct, and supported them herself, she would be entitled to their verdict, the burden of proof being upon the plaintiff to show that she supported and maintained them, and upon defendant to show that he was prevented by her acts from performing the service himself. There was evidence to warrant these instructions.

The court nonsuited the plaintiff as to her second cause of action, and the case proceeded to a verdict for the defendant as to the first cause of action, and plaintiff appealed from the judgment thereon.

*Clement & Clement and R. Lee Wright for plaintiff.*
*W. H. Woodson and Abner C. Goode for defendant.*

WALKER, J., after stating the case: We think the last ruling was a proper one, as it does not appear that plaintiff has brought her case within the terms or spirit of the Revisal, sec. 180, which is as follows: "In all cases where the surviving parent of any orphan child shall have willfully abandoned the care, custody, nurture, and maintenance of the child to kindred, relative, or other person, the parent shall be deemed to have forfeited all rights and privileges with respect to the care, custody, and services of such child." There was no evidence that defendant was a *surviving* parent who had *willfully* abandoned his children. When he left his home, under compulsion, as he alleged, his wife was living, and continued to live for some time. When she died, the plaintiff took the two children into her own custody and, as the jury must have found, if we construe the verdict in the light of the evidence and the charge of the court, she prevented the defendant from having any access to them or from performing his parental duty of support and maintenance. The case of *Howell v. Howell,* 162 N. C., 283, cited by the plaintiff's counsel, is not in point, as it appeared there that the defendant had assisted his daughter, Mrs. Howell, in abducting the child, Lucy Howell, so that the plaintiff, her father, was thereby deprived of his rightful cus-

tody of her, to his injury and damage. Here a third party is suing the father, who is entitled to the custody of his child unless he has in some way lost the right, and such is not the case here. *Newsome v. Bunch,* 144 N. C., 15. The last case is much like this one in its general features. Many other authorities are to the same effect. 1 Blackstone (Shars-wood's Ed.), 452, and note 10; 21 A. and E. Enc., 1036; *In re Turner,* 151 N. C., 474; *In re Jones,* 153 N. C., 312; *Littleton v. Haar,* 158 N. C., 566; *Howell v. Howell, supra.* This right of the father continues to exist until the child is enfranchised by arriving at years of discretion, "when the empire of the father gives place to the empire of reason." 1 Blackstone, 453; *Newsome v. Bunch, supra.* Where there is a contest for the custody of the child between those asserting conflicting rights to the same, the courts have, in modern times, adopted the rule stated by the great *Chancellor Kent:* "The father, and on his death the mother, is generally entitled to the custody of the infant children, inasmuch as they are their natural protectors, for maintenance and education. But the courts of justice may, in their sound discretion and when the morals or safety or interests of the children strongly require it, withdraw the infants from the custody of the father or mother and place the care and custody of them elsewhere," which was approved by this Court in *Latham v. Ellis,* 116 N. C., 30. See *In re Turner, supra.* The father may forfeit or surrender his right, as the above authorities declare, but there has been no such loss or abdication of his right in this case, as appears from the facts in the record. Plaintiff alleges, and testified, that instead of surrendering his right to plaintiff, she had given up the children voluntarily to him and he carried them away with her free consent.

As to the first cause of action, plaintiff objected to the deposition of the defendant being read, because of an agreement that she should waive all irregularities in the taking of it, and that it should be opened and read subject to her objections and exceptions. It may be admitted that this condition extended to objections made at the trial, and was not restricted to those already noted in the deposition, and we are inclined to think this is correct; but if it is so, the plaintiff was given the full benefit of this construction of the stipulation. The objections were noted, passed upon, and overruled. They were directed chiefly to the leading character of the questions. It was a matter addressed to the sound discretion of the court whether this kind of examination should be permitted, under the peculiar circumstances, and the exercise of this discretion is not reviewable, except in case of gross abuse, which does not appear in this instance. Jones on Evidence (2 Ed.), sec. 819 (319), where the author says, quoting and indorsing what had been said in Best on Evidence (10 Ed.), sec. 641: "It should never be forgotten that 'leading' is a relative, not an absolute, term. There is no such thing as

'leading' in the abstract, for the identical form of question which would be leading of the grossest kind in one case or state of facts might not only be unobjectionable, but the very fittest mode of interrogation in another. The subject is one of judicial discretion, and the allowing or refusing leading questions is *not generally a ground for appeal.* If, however, there appears a clear *abuse of discretion,* it is ground for exception and reversal." *N. Pac. Ry. Co. v. Aslin,* 158 U. S., 271; *Crenshaw v. Johnson,* 120 N. C., 270. And it is said to be especially a matter of discretion where the witness is examined on written interrogations. *Holmes v. Clisby,* 131 Ga., 241. See, also, Jones on Evidence, sec. 819, and notes, where many cases upon this subject are collected.

In the first cause of action plaintiff sought to recover, as upon a *quasi* contract, for services rendered and money expended in the support, education, and maintenance of the two children of the defendant, a duty which was owing by him to them, and as she had performed this legal obligation for him, she claims that the law raises an assumpsit on his part to reimburse her. If these were all of the facts, her conclusion would not be questioned. But there are other important and material facts which the jury have evidently found against the contention of the plaintiff. The general doctrine stated by plaintiff's counsel is fully sustained by the authorities discussed in their well prepared brief. 2 Kent Com., 193; Tyler on Infancy, 114; 29 Cyc., 1609; *Hagler v. McCombs,* 66 N. C., 346; *Honeycutt v. Thompson,* 159 N. C., at p. 31; *Dennis v. Clark,* 2 Cush. (Mass.), 347; *Johnson v. Barnes,* 69 Iowa, 643; *Courtwright v. Courtwright,* 40 Mich., 633; *Van Valkinborough v. Watson,* 13 Johns. (N. Y.), 480; *Gilley v. Gilley,* 79 Me., 292; *McCarthy v. Hinman,* 35 Conn., 538; 5 Wait Aclin and Def., 50; 28 A. and E. Anno. Cases, 296, 1913 C.; 1 Blackstone, 446; *Porter v. Powell,* 7 L. R. A. (O. S.), 176, and notes. These citations fully explain and fairly illustrate the principle. But the court, as will be seen by referring to the extract from the charge given above, instructed the jury, not only fully, but carefully, and in exact accordance with the conceded principle concerning the legal duty of a father towards his children in respect of their support, maintenance, and education. The ground of his liability could not well have been more completely covered. The plaintiff should have found fault with the verdict, and not with the charge, and this is the course she pursued, as she moved to set aside the verdict; but whether this should be done when it is against the weight of the evidence is a matter entirely within the discretion of the lower court, and we have no power to do so, nor generally to review the ruling of the trial judge. The question of defendant's liability was fairly submitted to the jury, under correct instructions, and the verdict must stand, as being a final decision upon the facts.

It may be that the verdict should have been otherwise than it is, and that the defendant should have been held liable to the plaintiff for something; but we cannot come to the aid of plaintiff under the circumstances, although the evidence may have left that impression upon us, for we have only to do with the law, leaving the facts to be found by that tribunal which has been so wisely and fortunately appointed by the law for the purpose. The defendant alleged and testified that he was perfectly willing to support and maintain his children, but was actually prevented from doing so by the gross misconduct of the plaintiff, due to her infirmity of disposition, or temper, and her unjust and gratuitous interference with his domestic affairs, driving him from his home, which she had made unhappy by her intolerance, quarrelsome disposition, and complete domination, and that she, in various ways, not only obstructed him, but rendered it impossible for him to get possession of his children, or communicate with them, so that he could perform his legal duty to them, when he was at all times ready and willing to do so. If this is true, and the jury found it to be so, she will not be permitted to take advantage of her own wrong. There was also evidence of a rather convincing character that she had not taken good care of the children, and by reason of her indifference to and neglect of their educational, moral, and religious training, she was not a proper person to have their custody. They roamed about the streets, poorly clad, and without any show of restraint, where their morals were apt to be corrupted by association with evil-minded persons, and in other respects they failed to receive that attention and oversight which was so essential, especially at their tender age, to the proper formation of their character and to their education and correct discipline. There was also evidence that they now have a good home with their father, where they are contented and happy and receiving the benefit of a father's care and devotion. The jury were doubtless greatly influenced by these considerations in returning the verdict which is now attacked, and perhaps it is a just and righteous one. There is a strong presumption that it is so. It may be that the father, not willing to act longer in resentment towards the plaintiff, and while not legally bound to do so, will yet make some fair allowance for her care of his children, as a moral obligation resting upon him, actuated more by a generous and chivalrous spirit than a mere insistence upon his strict legal rights. This obligation, if it really exists, we cannot enforce, but her services have been of some benefit to his children and to him, and it is not improper to remind him that our legal is not always commensurate with our moral duty.

We have found no error in the rulings and charge of the court to which exceptions were taken.

No error.