Civil action to recover for and on account of expenses incurred by plaintiff in the necessary maintenance of the son of plaintiff and defendant, who prior to and since his twenty-first birthday was and has been mentally and physically incapable of earning a livelihood, — heard upon demurrer to complaint filed by plaintiff.
Plaintiff alleges in material aspects: That she and defendant were married to each other on 7 April, 1917, and to them R. S. Wells, their oldest child, was born on 28 October, 1919;
"3. That since on or about the ..... day of February, 1938, when defendant left the residence which was then being occupied by plaintiff, defendant and their children, the defendant has been living separate and apart from said plaintiff; *Page 615 
"4. That prior to and at the time defendant separated himself from plaintiff, they and their children, including said R. S. Wells, were living in Elm City in the above named State and County and in the residence which had been theretofore occupied by plaintiff, defendant and their children; . . .
"6. That said R. S. Wells, prior to, at the time of, and since he reached the age of 21, has, except when away at school, resided and still resides with and been under the care of his mother:
"7. That said R. S. Wells, prior to, at the time of and at all times since, his 21st birthday, has been and still is unmarried, insolvent and so handicapped, both mentally and physically, as to be absolutely incapable of earning a livelihood and is absolutely dependent upon the plaintiff, his mother, in whose care and custody he was left, for sustenance, care and support, and for the necessities of life and in fact, has been, and still is in such condition mentally and physically as to require more or less constant supervision, care, attendance and attention, and to such an extent as to take up the larger portion of plaintiff's time, both by day and night, and greatly handicap the plaintiff in her normal life, activities and opportunities:
"8. That for several years past and particularly since said R. S. Wells has passed his 21st birthday, the defendant has wrongfully abandoned said R. S. Wells, his son, and the supervision, support and maintenance of said R. S. Wells to this plaintiff, his mother, and, except in small, insignificant and wholly inadequate occasional contributions, has abandoned said child, his son, and his necessary maintenance, nursing, care and support to the plaintiff who has, at her personal expense, burden, trouble and sacrifice and by and through her personal efforts, been compelled, through defendant's misconduct, to supply and has in fact, during said period of time, supplied said R. S. Wells, with the necessities of life, including food, clothing, heat, medical attention, nursing and necessary personal attendance, attention and supervision, and, except for the home and its furniture, each and every comfort, care and attention, as well as the constant supervision required by his mental and physical handicaps:
"9. That the value of the necessities and necessary services and attentions as above outlined and so furnished by plaintiff to said R. S. Wells have been well worth the sum of $250.00 per month for each and every month since said R. S. Wells reached his 21st birthday, and the plaintiff, who has furnished the same is entitled to recover from defendant their value and particularly up to the 28th day of October 1946, in the total sum of $18,000 or some other large sum:
"10. That defendant is in fact, in law, and in morals wholly responsible for said necessities, the burden of which he has wrongfully attempted *Page 616 
to shift to plaintiff and he is a man of considerable means and property and amply able to provide and pay for the same."
Upon these allegations plaintiff prays judgment, etc.
Defendant demurred to the complaint filed in the above entitled action "for that it appears upon the face thereof that it does not state facts sufficient to constitute a cause of action, in that the plaintiff is suing upon an implied contract for necessaries, and for her own personal services furnished to her son, who is also the son of the defendant, who was, during the period covered by the suit, more than 21 years of age," and moved "that the action be dismissed."
The court sustained the demurrer, and ordered the action dismissed at cost of plaintiff and her surety. She appeals to Supreme Court and assigns error.
The question presented on this appeal is one of first impression in this jurisdiction. While the duty of the father to support his children during minority has been the subject of decision in opinions of this Court, it is conceded on this appeal that the duty of the father to support his child, who is defective mentally or physically, and who after reaching the age of twenty-one years continues in such condition, has not been the subject of decision in this State. The fact that the latter is true may be due to the fact that the defective children are relatively few when compared with all children in the State, who by nature must pass through the period of minority when they are held, in law, to be incapable of managing their own affairs, and to be under the jealous protection of the law. Or it may be, as Kent says: "The obligation of parental duty is so well secured by the strength of natural affection, that it seldom requires to be enforced by human laws." 2 Kent in American Law, 190.
Be that as it may, this question is now presented: Is a father under legal obligation to continue to provide necessary support to his son, who prior to, and after reaching the age of twenty-one years is and continues to be insolvent, unmarried and incapable, mentally and physically of earning a livelihood? We hold that he is under such obligation.
"The duty of parents to provide for the maintenance of their children is a principle of natural law." It is "an obligation laid on them not only by nature herself, but by their own proper act, in bringing them into the world . . . By begetting them, therefore, they have entered into a *Page 617 
voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved." 1 Blackstone's Commentaries (Lewis' Edition), 419.
Basically, the duty of parents, primarily the father, to provide necessary support, care and maintenance for their children may be said to rest on the inability of children to care for themselves. "The wants and weaknesses of children render it necessary that some person maintains them, and the voice of nature has pointed out the parents as the most fit and proper persons. The laws and customs of all nations have enforced this plain precept of universal law . . . The obligation on the part of the parent to maintain the child continues until the latter is in a condition to provide for its own maintenance." 2 Kent on American Law, 190.
Ordinarily a child, in the eyes of the law, is in a condition to provide for his own maintenance when he has reached the age of twenty-one years, that is, has attained the status of majority. That age was arbitrarily fixed at common law for the termination of the child's minority, and the attainment of his majority, and the rule has remained in force throughout the United States. 27 Am. Jur., 748, Infants, 5. However, as stated byFullerton, J., in Springstun v. Springstun, 131 Wn. 109, 229 P. 14, 40 A.L.R., 595, "Majority or minority is a status, rather than a fixed or vested right . . . the rule was arbitrary in the sense that it was one of convenience and necessity, as distinguished from a substantive rule of law."
Therefore, if a child be so defective in mind or in body as to be incapable of providing his own maintenance when he reaches the age of twenty-one years, the rule does not remove the disability and has no application to the status of the child.
Moreover, the child may have the same need of support, care and maintenance after reaching that age as before. If so, does the obligation of the father to provide necessary support to such child terminate at that time? The dictates of humanity, which the law follows, answer "No."
In this connection we find in decisions of this Court in reference to the duties and obligations of the husband or father to his wife and to his children expressions which are indicative of the public policy of the State, such as these: In Ritchie v. White, 225 N.C. 450,35 S.E.2d 414: "It is the public policy of the State that a husband shall provide support for himself and his family . . . This duty he may not shirk, contract away, or transfer to another."
In re the Custody of TenHoopen, a minor, 202 N.C. 223, 162 S.E. 619: "It is the moral and legal duty of the father to provide for the protection, maintenance and education of his children," citing cases.
In Sanders v. Sanders, 167 N.C. 319, 83 S.E. 490: "There can be no controversy that the father is under a legal as well as a moral duty to *Page 618 
support his infant children, . . . and, if he has the ability to do so, whether they have property or not," quoted with approval in Green v. Green,210 N.C. 147, 185 S.E. 651.
And in Howell v. Solomon, 167 N.C. 588, 83 S.E. 609, Walker, J., speaking of the right of the father to the custody of his minor child, uses these words: "This right of the father continues to exist until the child is enfranchised by arriving at years of discretion, `when the empire of the father gives place to the empire of reason,' 1 Blackstone, 453." To the same effect are Newsome v. Bunch, 144 N.C. 15, 56 S.E. 509, and Littlev. Holmes, 181 N.C. 413, 107 S.E. 57.
Moreover, the law applicable to the case in hand as gleaned from decisions of the courts of the land is aptly summarized in the American Jurisprudence as follows: "A duty to support and maintain minor children, is universally recognized as resting upon the parents of such children usually upon the father primarily . . . This parental duty is said to be a principle of natural law, and is everywhere acknowledged as at least a moral obligation of parents toward their children. One view, sustained principally by early cases in England and in some of the American States, is that such duty is only a moral obligation and that there is no legal obligation on the parent to maintain his child, unless by force of some statute. But this doctrine, admitted to seem startling and opposed to the innate sense of justice by the court which gave to it its first American support, has been repudiated by the great majority of American courts. The prevailing view is that parents are, regardless of any statute, under a legal as well as a moral duty to support, maintain, and care for their minor children. This obligation is sometimes spoken of as one under the common law and sometimes as a matter of natural right and justice, and is often accepted as a matter of course without the assignment of any reason." 39 Am. Jur., 630, Parent and Child, 35. The author further states: "Generally, when a child arrives at the age of majority the parent is no longer under legal obligation to support him, but where a child is of weak body or mind, unable to care for itself after coming of age, and remains unmarried and in the parents' home, it has been held that the parental rights and duties remain practically unchanged, and that the parent's duty to support the child continues as before. The obligation to support such a child ceases only when the necessity for the support ceases." 39 C. J., 710, Parent and Child, Sec. 69, citing Breuer v. Dowden, 207 Ky. 12,268 S.W. 541, 42 A.L.R., 146; Crain v. Mallone, 130 Ky. 125, 113 S.W. 67, 22 L.R.A. (N.S.), 1165, 132 Am. St. Rep., 355; Rowell v. Vershire,62 Vt. 405, 19 A. 990, 8 L.R.A., 708; Schultz v. Western Farm Tractor Co.,111 Wn. 351, 190 P. 1007, 14 A.L.R., 514. Also Anno. 42 A.L.R., 154; 7 L.R.A., 177. *Page 619 
In Crain v. Mallone, supra, Carroll, J., writing for the Supreme Court of Kentucky, says: "The duty and obligation of a parent to care for his offspring does not necessarily terminate when the child arrives at age or becomes an adult; nor is it limited to infants and children of tender years. An adult may by accident or disease be as helpless and incapable of making his support as an infant, and we see no difference in principle between the duty imposed upon the parent to support the infant and the obligation to care for the adult, who is equally, if not more, dependent upon the parent. In either case the natural as well as the legal obligation is the same, if the parent is financially able to furnish the necessary assistance."
In Breuer v. Dowden, supra, the Supreme Court of Kentucky, throughSampson, J., further says: "From the texts and cases cited by the parties, we deduce the rule to be that a parent is not liable for the debts of his adult child, in the absence of a statute to the contrary, unless the child is in such a feeble and dependent condition physically or mentally as to be incapable of supporting himself; that if at the time the child becomes of age he is reasonably physically and mentally sound and fairly able, if willing, to make and earn his own support, the parent is not liable for his debts or obligations thereafter contracted, even though he should later become sick or mentally unbalanced and therefore incapacitated to earn a livelihood. If, however, the child at the time of his arrival at the age of twenty-one years is sick or otherwise incapacitated to earn a living for himself, and is, at the time, living in the home of the parent as a member of the household, the parent is liable for necessaries furnished him."
In Schultz v. Western Farm Tractor Co., supra, the Supreme Court of the State of Washington, through Fullerton, J., expresses this view: "Doubtless the legal duty of a parent to support his normal child ceases at the age of majority, but the rule is not the same with respect to his defective children, whether the defect be mental or physical. To these he owes a continuing obligation of support, which ceases only when the necessity for support ceases."
To like effect are the holdings of the New York courts. See Cromwell v.Benjamin, 41 Barbour's Supreme Court Reports, New York, 558, and In Re: VanDenburgh, 164 N.Y. S., 966.
In the light of the public policy of this State, and in keeping with the dictates of humanity, the principles of law enunciated in these authorities are persuasive and convincing. Hence, we hold that ordinarily the law presumes that when a child reaches the age of twenty-one years he will be capable of maintaining himself, and in such case the obligation of the father to provide support terminates. But where this presumption *Page 620 
is rebutted by the fact of mental or physical incapacity, it no longer obtains, and the obligation of the father continues.
Applying this holding to the allegations of the complaint in the present case, admitted as true for the purpose of testing the sufficiency of complaint to state a cause of action, when challenged by demurrer, we are of opinion and hold that the allegations of the complaint do state a cause of action, and plaintiff is entitled to an opportunity to be heard in court. Under a liberal interpretation of the complaint, which the plaintiff is entitled to have us make, the inference is reasonably deduced from the facts alleged, that the expenditures made by the plaintiff since the son reached the age of twenty-one years were impelled by necessity. See Ritchiev. White, supra.
The judgment below is
Reversed.