BETTY MARIE MILLER FORD v. SECURITY NATIONAL BANK OF GREENSBORO, NORTH CAROLINA, GUARDIAN FOR CHARLIE W. MILLER, INCOMPETENT, ALBERT W. MILLER, EFFIE MILLER BARE, JENNIE MILLER SMITH, AND BESSIE MILLER SMITH.

(Filed 5 November, 1958.)

**1. Insane Persons § 6: Parent and Child § 5—**

A parent is under legal and moral obligation to support his minor children, which obligation is applicable to both sane and insane parents, but this obligation normally terminates when the child reaches his majority and ceases to be dependent.

**2. Insane Persons § 6— Findings held to support order for advancement to adult children out of estate of incompetent father.**

Findings to the effect that an incompetent was incurably insane, that his estate was greatly in excess of any needs for his support, hospitalization and maintenance, that his adult children were in dire financial need, and that advancements to them from their father's estate would operate for the better promotion and advancement in life of the children, support an order directing advancements to be made to the children out of the surplus estate of the incompetent, G.S. 35-20, G.S. 35-21, and such order will not be held erroneous for want of direction in the order securing the advancements from being wasted, G.S. 35-26, the finding that the advancements would operate for the better promotion in life of the children, supported by evidence, being conclusive even though it should later turn out that the advancements were wasted, and it being a permissible inference from the evidence and findings that the advancements would be used to aid the children, respectively, in the purchase of homes.

PARKER, J., not sitting.

APPEAL by defendant guardian from an order entered by *Rousseau, J.,* in Chambers on 8 March 1958.

Plaintiff instituted this proceeding in the Superior Court of Ashe County against her father, Charlie W. Miller, an incompetent, his guardian, Security National Bank, and her brother and sisters to have an advancement made to her from her father's estate pursuant to the provisions of G.S. 35-19 et seq. The individual defendants, having first denied plaintiff's right to have an advancement made, amended their answer and asked that advancements be made to them. The guardian denied advancements should be made and asserted if awards were made they would be wasted, and for that reason should not be made.

The clerk of the Superior Court, having heard evidence, made findings of fact which, abbreviated, are:

Charlie W. Miller is and has been for many years mentally incompetent. He is confined in a veteran's hospital. His mental condition is permanent. He is unmarried and has made no will. Plaintiff and individual defendants, all of age, are his children and in the event

of present death would be his heirs and distributees.

The incompetent has assets held by his guardian in excess of $47,000 and receives from the Veteran's Administration an annual income of $310.44, hospitalization, and custodial care provided without expense to the incompetent. These amounts are greatly in excess of any needs of the incompetent.

Plaintiff is married and has one child nine years old. She has been abandoned by her husband, has no home, and is, and, for some time past, has been, unable to support herself and to keep and provide a home for her child. She has been variously employed as a seamstress and a cook, earning approximately $30 to $35 per week. She is wholly without property and virtually without any funds whatsoever and in destitute financial circumstances. An advancement from the estate of her said father would operate for her better promotion and advancement in life.

Effie M. Bare is living separate and apart from her husband, has no property of her own, and is living in a rented home and has and is supporting seven children, the youngest of whom is one year of age and the eldest of whom is fourteen years of age. She is receiving the sum of $69 per month from the Ashe County Department of Public Welfare for assistance in the support and maintenance of said children.

Jennie Miller Smith owns no property and lives with her husband and four children in a rented house.

Bessie M. Smith is a widow with three children. She has no property and lives in a rented house.

Albert W. Miller is married and has two children and has recently purchased a home on which he owes a balance of $5500 and owes at least $700 in other bills which he is financially unable to pay.

An advancement from the estate of their father will operate for the better promotion and advancement in life of defendants.

Based on his findings, the clerk directed the guardian to pay to each of the children, as an advancement the sum of $4,770.30. The total of this amount represents half of the assets held by the guardian. The order does not restrict the use of the funds to the purchase of a home, but applicants had requested advancements for that purpose. The guardian excepted to the order and appealed to Judge Rousseau, resident judge.

Upon a review of the evidence, Judge Rousseau adopted the findings of fact made by the clerk and thereupon approved the order of the clerk directing the guardian to make the advancement to each of the children.

The guardian excepted to the findings of fact and to the order directing an advancement to each child and appealed.

*Bowie, Bowie & Vannoy for petitioner, appellee.*
*W. B. Austin for respondent appellees.*
*Cooke & Cooke for guardian for Charlie W. Miller, Incompetent.*

RODMAN, J. The assignments of error do not challenge the impoverished condition of the children nor the adequacy of the incompetent's estate to make the payments as directed without endangering his prior right to support.

The guardian's position is that the evidence demonstrates that an advancement made to any child would be wasted unless properly secured by court order and for that reason the payment ordered is not for the better promotion or advancement in life of any child and is not therefore authorized.

While a parent is under a legal as well as a moral obligation to support his minor children, that obligation normally terminates when the child reaches his majority and ceases to be dependent. *Wells v. Wells,* 227 N.C. 614, 44 S.E. 2d 31, 1 A.L.R. 2d 905.

This parental obligation was recognized as applicable to both sane and insane parents in *Brooks v. Brooks,* 25 N.C. 389. *Ruffin, C. J.,* there said: "It is true, as we think, that the wife and children of a lunatic are entitled to maintenance out of the estate, according to their circumstances, after providing properly for the lunatic. The statute *de prerogative regis,* 17 Ed. II, ch. 10, which provides that lunatics 'and their households' shall live and be maintained competently from the issues of their estates, has not indeed been re-enacted here; and for that reason our Courts may not be authorized to extend the allowance to collateral relations, or to advancements to married children, as is done in England. *In re Cotton* and *in re Hinde,* 2 Mer., 99."

Whether the statute of 17 Ed. II was in fact merely declaratory of the common law which the courts had a right to exercise without statutory authorization or whether the courts derived their authority from the statute was again adverted to in *In re Latham,* 39 N.C. 231. The decisions in these cases were perhaps the reason which caused the Legislature to write as a part of our statute law what is now the first sentence of G.S. 35-20 and sections 22 to 27 of c. 35 of the General Statutes. They were enacted by the Legislature which adopted the Revised Code of 1854. Notwithstanding the statutes have been on our books for more than a century, we are now for the first time called upon to interpret the meaning of secs. 22 and 26. This absence of litigation speaks highly, we think, of the manner in which guardians and court officials have exercised the authority granted them.

As first enacted, only surplus income could be used; but any doubt cast by *Brooks v. Brooks, supra,* as to the right to use such surplus

income to assist adult members of the incompetent's family was removed by sec. 10 of the original Act, now G.S. 35-22. In granting this authority to the court, the Legislature declared that advancements should not be made to persons who would probably waste them and granted the court authority to secure the advancements so as to protect the family of the person advanced. G.S. 35-26.

In 1924 the Legislature broadened the authority given the court so as to permit the use of either surplus income or surplus estate when the incompetent had neither wife nor children. This provision is now the last sentence of G.S. 35-20. In 1925 similar provision was made for the use of surplus estate for the better promotion in life of adult children when there was no one to whom the incompetent owed a legal obligation of support. G.S. 35-21.

No one can doubt that financial assistance would be of benefit to the children of the incompetent occupying the economic status in life depicted by the evidence and the findings of fact. If their father were mentally competent, would he not aid them? If so, the court has the authority to use his money for that purpose.

The court, having reached the conclusion that financial help should be given, was confronted with the problem of determining the time and manner and the amount. What finer thing could be done for these children of this incompetent veteran of World War I than to assist them in acquiring a home? Our fundamental law recognizes the benefits accruing from home ownership. Within the limits provided, the homestead cannot be taken for debt. Constitution, Art. X, sec. 2. It can be conveyed only with the written assent of the wife. Art. X, sec. 8. It may be exempted from taxation to the extent of $1000. Art. V. sec. 5.

The evidence demonstrates a need and a proper purpose. Will the moneys advanced be used wisely or will the recipients in fact waste the advancements from their father? Only time will tell. Neither clerks nor judges are infallible. All that is required is an honest and sincere effort to ascertain the facts. If future events should demonstrate that the court made an erroneous finding, that does not invalidate a fact found after a full hearing and sincere consideration of all of the evidence.

The statute imposed a duty on the clerk and judge to ascertain the facts. That duty has been performed. No suggestion is made that it was not sincerely performed. Appellant challenges only the soundness of findings and the wisdom of the order.

The evidence shows none of the applicants have accumulated any property. There is evidence of sexual promiscuousness by some applicants, but the evidence also indicates at least a part of the many difficult problems confronting applicants in early life.

It cannot be said that the evidence leads to the sole conclusion that applicants are unworthy to presently receive a part of their father's estate, or if it is paid to them it will be wasted to their detriment, or that their families will thereby be deprived of proper support.

The facts have been ascertained. The evidence is sufficient to support the findings, and the findings are adequate to justify the judgment.

Affirmed.

PARKER, J., not sitting.