In the matter of ELIZABETH LEWIS.

*Parent and Child—Jurisdiction.*

1. The jurisdiction of clerks of the superior ·court, in the appointment of guardians of infants, &c., does not extend to a case where the petitioner asks . for the custody of a child who had been placed by its mother under the · control of another.

2. The court intimate that a mother cannot make a disposition of her child, so as to confer upon another the right to its custody and control.

3. The correctness of the decision in *Jordan* v. *Coffield,* 70 N. C., 110, doubted.

PETITION to obtain possession of Sarah Jane Lewis, an infant, filed in the probate court, and heard at November Special Term, 1881, of HALIFAX Superior Court, before *Gilmer, J.*

In February, 1881, Benjamin Collins and Mrs. W. D. Lewis entered into an agreement under seal, whereby he engaged to support her during her life, and in consideration thereof she undertook to convey to him her child, Sarah Jane, until she should become of full age, the said child being illegitimate, and then of the age of ten years.

Soon thereafter the mother died, leaving the child in the possession of the said Collins, but in May following, Elizabeth Lewis, who was a sister to the mother, made application to the

clerk of the superior court of the county, to have the child taken from his custody, upon the score of his intemperate habits and moral unworthiness, and setting forth a purpose, if possible, to secure her a place in the Orphan Asylum at Oxford.

The clerk caused notice to be served upon Collins to show cause why the same shall not be done, and accordingly at the time appointed, he made answer, setting up the deed of the mother, and claiming to be entitled to have the child upon the strength thereof, and denying that his habits were bad, and professing to have become so much attached to the child as to be willing to adopt her as his own.

The clerk being satisfied of his unfitness to have the custody of the child, directed the sheriff to take her from his control, and place her with her aunt, the petitioner, and this was accordingly done.

Collins prayed an appeal from this order to the judge of the superior court, but the clerk holding him not to be entitled thereto, refused to allow it. He then applied for and obtained a writ of *certiorari*, and the matter was brought before the judge, who, after argument, dismissed the proceedings, upon the ground that the clerk had no jurisdiction in the premises, and his order was therefore void.

The respondent, Collins, then asked for an order restoring the child to his custody, as having been improperly taken from him, under color of the law, but His Honor having learned that she was then in the Asylum at Oxford, and, deeming that the best situation for her, declined to make such an order, and the respondent appealed.

*Messrs. Mullen & Moore,* for respondent.
*Messrs. Day & Zollicoffer, contra.*

RUFFIN, J. The jurisdiction of the clerks of the superior courts, in all matters, is regulated entirely by statute, and, in the case of infants, extends only to appoint them guardians, binding

them as apprentices, and (perhaps) granting orders allowing of their adoption. As the proceeding in this case falls under neither of these heads, it is clear to the court that the action of the clerk as regards this infant, was *ultra vires,* and it was proper therefore to dismiss the proceeding, as was done.

It is equally certain too, that the appellant acquired no *right* to the custody of the infant, Sarah Jane, under the deed of her mother. It may be questioned, in truth, whether in this state a mother can at all make a disposition of her child, though a minor, so as to confer upon another the right to have the custody and control thereof. This right, as well as that to the services of a child, is said by all authorities to be derived from, and dependent upon, the obligation which the law imposes upon the parent, to protect, educate and maintain the child during infancy, and when no such obligation is imposed, then no such rights exist. See Tyler on Infancy, 274—5, and the cases there cited.

In considering the obligations of à mother to support her infant child, this court declared in *Jordan* v. *Coffield,* 70 N. C., 110, that they were not the same or as great, as those of a father, and that the weight of authority was against such a liability on her part. If this declaration of the law is to be accepted as binding upon the courts, it would seem to put an end to every right of the mother to control the custody of her child, or to have its services. As the point, however, does not appear to have been necessary to the decision of that case, and as the principle asserted seems not altogether consistent with other authorities, or with the law of our nature, we may not feel ourselves bound by it, should the question be more distinctly presented in another case. But be this as it may, there is not the least doubt in the mind of the court, as to the utter want of authority on the part of a parent—whether father or mother—to sell a child, and for a selfish consideration, commit it to the keeping of another.

As touching the right to the custody of children, the doctrines of the common law have been greatly weakened of late, and

courts pay less regard to the strict legal rights of parents, even than they were wont to do, and look more to the interests, moral and physical, of the infants themselves—making it, indeed, their paramount consideration.

In Hurd on *Habeas Corpus*, 528, it is said that where the custody of children is the subject of controversy, the legal rights of parents and guardians will be respected by the courts, as being founded in nature and wisdom, and essential to the virtue and happiness of society, still the welfare of the infants themselves is the polar star by which the discretion of the courts is to be guided; and to the same effect is the treatise on Infancy before cited, and Schouler on Domestic Relations, § 248.

If this be so in the case of a parent, how much more ought it to prevail in the case of a stranger, who, like the appellant, bases his claim to the custody of an infant, not upon any law of natural affection, but upon a contract of purchase made with a dying mother.

In this, moreover, lies the distinction between this case and those relied upon by counsel, where it was held, that whenever a party had been wrongfully deprived of property under the color of judicial proceedings, the law must see him restored to the possession, or else be untrue to itself. Here, it is not property which is the subject of the action, nor anything in which, strictly speaking, the parties can be said to have any rights. Throughout the whole case, the petitioner and the respondent both profess to have been governed in their action by considerations for the comfort and welfare of the infant alone; and in making the same considerations the controlling motive for his action, the judge below did just what the authorities all say he should have done.

No error. Affirmed.