*In re* CONSTANCE TURNER.

(Filed 15 December, 1909.)

1. **Habeas Corpus — Custody of Child — Rights of Parents — Third Persons.**

    In the exercise of a sound legal discretion subject to review on appeal, the court. in *habeas corpus* proceedings, may, in proper instances, order the child into the custody of some third and fit person against the claims of the father and mother therefor.

2. **Same—Industrial School—Custodia Legis—Visiting, Etc.**

    It appearing from the findings of the lower court in *habeas corpus* proceedings for the custody of a child, that both parents claimed it; that the father was improvident and traveled from place to place without a fixed place of abode; that the mother was scarcely a fit person, and resided beyond the borders of the State; the court ordered the child into the custody of the Home Industrial School at Asheville and that the father pay $80 for its care and maintenance there, with leave to the parents to visit and have access to it under the order and supervision of the court, the child to spend one-half the time during vacation with each of her parents, each to give a bond for $300 for the return

of the child to the jurisdiction of the court, retaining the cause for further orders. *Held*, no error, with the modification that the mother should not have the custody of the child in such a manner as to enable her to remove the child beyond the court's jurisdiction.

APPEAL from order rendered by *Joseph S. Adams, J.,* in *habeas corpus* proceedings, BUNCOMBE County, September, 1909.

This is an application for a writ of *habeas corpus,* which was issued on the petition of Elizabeth Turner for the possession and custody of Constance Elizabeth Turner, hereinafter designated as Constance; and on the hearing of said petition, James B. Turner, father of Constance, came in and asked that he be made one of the petitioners with the original petitioner, Elizabeth Turner, which was granted. After considering all of the evidence adduced by the petitioner, Elizabeth Turner, the mother of Constance, the judge found the following facts:

"1. James B. Turner and Claudia Turner were married in the year 1901, in the State of Florida.

"2. In 1902 the said Constance was born to the said James B. Turner and Claudia, in Winston, N. C., and the said Constance is now a girl seven years of age.

"3. James B. Turner and Claudia Turner did not for the last few years live happily together as man and wife, and before the final separation, hereinafter referred to, there had been a temporary separation between them. In the year 1908 the last and final separation occurred, at the time of which the said Claudia Turner, respondent, and the petitioner, James B. Turner, were living in the State of Florida.

"4. In 1908, when the final separation occurred, the said Constance remained in the custody of Claudia Turner.

"5. The respondent, Claudia Turner, shortly after the separation, decided to take a business course of study, and while she was taking such course she left Constance with an aunt of the respondent in the city of Atlanta, and after some months the said aunt notified the petitioner, James B. Turner, that he must come and get his child, and in response to such notice the petitioner, James B. Turner, did go to Atlanta, Ga., and get the child, and turned her over to his brother, Harold Turner, at that time residing in Statesville, N. C.

"6. The child, Constance, remained in the possession and custody of the said Harold Turner for about eight months, and in August, 1909, the said Harold Turner delivered the child to the petitioner, Elizabeth Turner, the mother of the petitioner, James B. Turner, in Asheville, N. C., where the child remained until the beginning of these proceedings.

"7. The respondent, Claudia Turner, consented that the child might be taken from her aunt, in Atlanta, and carried to the home of Harold Turner and kept there until she had finished her course in a business college and was able to provide for the child.

"8. In September, 1909, the respondent, Claudia Turner, came to Asheville, went to the house of Elizabeth Turner and took possession of the child, over the protest and resistance of the family of the petitioner, Elizabeth Turner. At the time of this taking possession of the child, the petitioner, James B. Turner, was not in the State of North Carolina, but had left the State with the declared purpose of going to a Western State and securing work and of traveling from one place to another, but upon receiving notice of said proceedings James B. Turner returned to Asheville and was present at the hearing of this writ.

"9. During the continuance of the married life of James B. Turner and Claudia Turner he inadequately provided for his family, frequently left them alone, and on one occasion they were ejected from a house in Durham while the said James B. Turner was away, in Norfolk, Va.

"10. James B. Turner is a plumber by trade, but an improvident man, without property and without any fixed place of abode, who travels from place to place and frequently travels on railroads without paying his fare. He cannot be relied upon to make provision for his child and is an unfit person to have the custody of her.

"11. It was contended by the respondent that Claudia Turner had not, during the whole of her married life, been true to her marriage vows, and there was some evidence adduced before me arousing some suspicions, but not to justify the finding that she is not a virtuous woman.

"12. Claudia Turner is a hard-working, industrious and capable woman, twenty-three years of age. At present she is a stenographer in the office of the Griffing Nursery Company, in the city of Jacksonville, State of Florida, and is earning $15 a week and is financially capable of providing for and taking care of the child.

"13. There was much evidence before me that she at present sustains a good character in Jacksonville, Fla.

"14. The petitioner, Elizabeth Turner, is a very aged lady, of good character and limited means, but it is manifest that the feeling between her and Claudia Turner is such that to give her the custody of the child would make it impractical for the mother to ever see the child.

---

"15. The feeling existing between the family of the petitioner, Elizabeth Turner, and Claudia Turner is very bitter.

"16. In the year 1909 Claudia Turner obtained a divorce, in the State of Florida, from James B. Turner, but no personal service was made upon the said James B. Turner.

"Upon the foregoing facts, I adjudge that the child be placed in the custody of Miss Stevenson, superintendent of the Home Industrial School, at Asheville. This is a high-grade institution for the education of girls and young women, and the said Miss Stevenson is a woman of exalted character and high attainments, and I order that the said Constance be put in the said institution for one year, on the following conditions: The petitioner, James B. Turner, shall pay the sum of $80 for the maintenance of Constance for one year in the said institution; the petitioner and the respondent and the father to be allowed to visit and have access to the said child, under the order and under the supervision of the court; during the vacations the child to spend one-half of her time with the petitioner, James B. Turner, and one-half of her time with the respondent, Claudia Turner; each to give bond in the sum of $300 for the return of the child to the jurisdiction of this court.

"This cause is retained for any further orders that the court may see proper to make. The clerk of this court will deliver or mail a certified copy of this to Miss Stevenson.

Jos. S. ADAMS, *Judge.*"

*Zeb. F. Curtis* and *Zebulon Weaver* for appellant.
*Craige, Martin & Thompson* and *Warwich & Jennings* for defendant.

WALKER, J., after stating the case: The ruling of *Judge Joseph S. Adams* in this case is, we think, fully sustained by the authorities and principles of law applicable to such cases. We repeat what we said in *Newsome v. Bunch,* 144 N. C., at p. 16, that the father is, in the first instance, entitled to the custody of his child. But this rule of the common law has more recently been relaxed, and it has been said that where the custody of children is the subject of dispute between different claimants, the legal rights of parents and guardians will be respected by the courts as being founded in nature and wisdom, and essential to the virtue and happiness of society; still the welfare of the infants themselves is the polar star by which the courts are to be guided to a right conclusion; and, therefore, they may, within certain limits, exercise a sound discretion for the benefit of the child, and in some cases will order it into the custody of a third

person, for good and sufficient reasons. *In re Lewis,* 88 N. C., 31; Hurd on Habeas Corpus, 528, 529; Tyler on Infancy, 276, 277; Schouler on Domestic Relations, sec. 428; 2 Kent's Com., 205. But, as a general rule and at the common law, the father has the paramount right to the control and custody of his children as against the world; this right springing necessarily from and being incident to the father's duty to provide for their protection, maintenance and education. 21 A. & E. Enc., 1036; 1 Blackstone (Sharswood), 452, and note 10, where the authorities are collected. This right of the father continues to exist until the child is enfranchised by arriving at years of discretion, when the empire of the father gives place to the empire of reason. 1 Blk., 453. But we also said in that case that the court, in the exercise of a sound legal discretion, may order the child into the custody of some person other than the father, when the facts and circumstances justify such an order in regard to the custody of the child. The law, as thus declared by us in that case, is strongly established by the great weight of authority, and we must abide by it. It is also applicable to the facts of the case now under consideration. Kent, one of our wisest, most humane and greatest chancellors, thus states the rule: "The father, and on his death the mother, is generally entitled to the custody of the infant children, inasmuch as they are their natural protectors, for maintenance and education. But the courts of justice may, in their sound discretion and when the morals or safety or interests of the children strongly require it, withdraw the infants from the custody of the father or mother and place the care and custody of them elsewhere." We endorsed this statement of the law in *Latham v. Ellis,* 116 N. C., at p. 33. The judge properly refused to award the custody of the child to its nonresident mother, under the facts and circumstances of this case. *Harris v. Harris,* 115 N. C., 587; *In re Lewis,* 88 N. C., 31, where will be found an able and valuable opinion of the younger *Judge Ruffin* upon this subject. He conclusively shows that the court has the power to award the custody of the child, upon considerations affecting the comfort and welfare of the infant, and, in the language of the learned and just Judge, "The court below did just what the authorities all say he should have done." In Tiffany on Domestic Relations, at p. 248, it is said that, "Though the courts have a discretion in contentions over the custody of children, and will take into consideration the welfare of the child, they cannot act arbitrarily and disregard the right of the father (parent) merely because the prospects and surroundings of the child will be brighter if he is awarded to some other and .

more wealthy person. The right of the father is generally held to be a paramount one, if he is a fit person." This is all very true. It would be a shocking injustice for the courts to act arbitrarily in the matter. They have a discretion, but it must be a sound, legal discretion, subject in its exercise to review by this Court. This discretion must be exercised under the guidance of a proper sense of justice and a due regard for the welfare of the child and the interest of those who are its natural guardians. In this case the mother barely escaped the condemnation of the court below. While the judge should always find the facts, and not state merely the evidence which tends to establish them, we think it sufficiently appears in the findings, as made, that the judge acted not only legally, but humanely, in making the order. He retained full control of the matter, and may make such orders as the happiness and welfare of the child, the interests of all concerned and the ends of justice require. The order appealed from was right, and we concur with his Honor, *Judge Adams,* in his ruling, except that the custody of the child should not be committed to its mother, as is provided by the order of the court, in such a way as to enable her to remove the child beyond the jurisdiction of the court. This should be most carefully guarded against. *Harriss v. Harriss, supra.*

Modified and affirmed.