## IN RE HABEAS CORPUS OF MARY JANE JONES.

### (Filed 26 October, 1910.)

1. Habeas Corpus—Parent and Child—Custody.

In *habeas corpus* proceedings for the possession of a nine-year-old child, the parents of the child, who are living together as lawful man and wife, have *prima facie* the right to its control and custody, and when without being divorced they are living apart, the question concerning the disposition of their offspring must be decided under the provisions of Revisal, sec. 1853.

2. Same—Illegitimate Child—Prima Facie Right.

In the case of illegitimate children, the same *prima facie* right of the parent to the custody of the offspring exists as in case of legitimacy, perhaps to a lesser degree, in the mother, where she evinces a capacity and disposition to properly care for her children.

3. Same.

It appearing from the findings of the lower court in *habeas corpus* proceedings by the mother, against her uncle and his wife for the care and custody of her nine-year-old illegitimate child; that the petitioner had lived with the uncle and wife, as one of their family, until five years before the proceedings were brought, when she married and was living with her husband, both being desirous of its custody, both of whom were "respectable colored people, capable of rearing and providing for the child"; and that there was no abandonment by the mother, Revisal, sec. 180. *Held*, The mother had the paramount right to the custody of the child, though its physical, mental and moral welfare were properly being cared for, and the child's affections were with those who then had its custody. *In re Samuel Parker*, 144 N. C., 170, cited and distinguished.

APPEAL from *C. M. Cooke, J.,* heard in chambers, 1 March, 1910, from VANCE.

Petition for writ of habeas corpus.

IN RE HABEAS CORPUS OF MARY JANE JONES.

The petition was filed by Nannie Green, mother of the child, who was and has been for some time in the care and custody of respondents, Prince Jones, uncle of petitioner, and his wife Laura.

On the hearing, the court found as facts among other things, that the child was an illegitimate child óf the petitioner, Nancy Green, and would be nine years of age in May, 1910; that she was being properly and well cared for by respondents, who are reputable colored people; Prince Jones, being a minister, having a church under his charge, owning about fifty acres of land which he has bought, but not fully paid for; that Laura Jones, his wife, is a reputable colored woman, and that she and her husband are capable of raising and properly providing for the child and are greatly attached to it; that the child has been and is being well and properly cared for and maintained, and she has become greatly attached to the said Prince Jones and his wife, and says she does not wish to leave them. It appears from examination of the child that she has been sent to school and to Sunday-school, and is now well advanced in her studies for one of her age and condition in life; that Nannie Jones, the mother, with her children, had been living for some time as a member of the family with Prince Jones and his wife, paying no board, but working as a member of the family until about five years ago, when she married Simon Green and went to live with him; "that Simon Green and his wife are respectable colored people and are capable of rearing and providing for the child; that they have from the date of their marriage, from time to time and repeatedly, applied to respondents to let them have the child, but they declined to do so. Upon one occasion they attempted to take the child away from them by force, and when they had the child in the buggy the child screamed, and the wife of Prince Jones took her out of the buggy."

Upon these the controlling facts relevant to the inquiry, the court entered judgment as follows:

(a) That the child is not illegally restrained of its liberty.

(b) That the welfare and interests of the child would best be promoted by permitting her to remain with respondents.

(c) And the court doth adjudge and decree that the said

Prince Jones and his wife, Laura Jones, are entitled to the care and custody of said Mary Jane Jones until she attains the age of fifteen years, at which time she may select between the petitioner and the respondents; but the court doth further adjudge that petitioner and her husband shall have the right at all proper hours to visit the child, and that the child shall be permitted to visit them whenever she should so desire.

Petitioner excepted and appealed.

*T. T. Hicks* for appellant.
*A. C. Zollicoffer* for respondents.

HOKE, J., after stating the case. In hearings of this character on habeas corpus, the parents of a child who are living together as lawful man and wife have *prima facie* the right to the control and custody of their infant children.

When divorced, the right to the children and their placing is more usually dealt with in the decree, and where they live apart, without being divorced, questions concerning the disposition of their offspring must be decided under the provisions of the Revisal, 1905, sec. 1853, to the effect: "The court or judge, on the return of such writ, may award the charge or custody of the child or children so brought before it either to the husband or to the wife, for such time, under such regulations, and with such provisions and directions as will, in the opinion of such court or judge, best promote the interest and welfare of the children. At any time after the making of such orders the court or judge may, on good cause shown, annul, vary or modify the same." In the case of illegitimate children, this same *prima facie* right exists, perhaps to a lesser degree, in the mother, and has been recognized in several decisions of the court where she has evinced a capacity and disposition to properly care for her children. *Ashby v. Page,* 106 N. C., p. 328; *Mitchell v. Mitchell,* 67 N. C., p. 307. True, we have held, and the ruling is in accord with enlightened and well-considered cases in other jurisdictions, that the welfare of the child is the cardinal influence and should not infrequently be allowed as controlling. Speaking to this question in a concurring opinion in *Parker's case,* 144 N. C., p. 173, the writer said: "The best interest of the

child is being given more and more prominence in cases of this character, and on especial facts has been made the paramount and controlling feature in well-considered decisions," citing *Bryan v. Lyon,* 104 Ind., 227; *In re Welsh,* 74 N. Y., 299; *Kelsey v. Greene,* 69 Conn., 291, but while this principle may be taken as accepted, it should be applied in reference to the paramount right of a child's parents to have the control and custody of their children, whenever, being of good character, they have the capacity and disposition to care for and rear them properly in the walk of life in which they are placed. A right growing out of the parent's duty to provide for their helpless offspring, not only enforcible as a police regulation, but grounded in the strongest and most enduring affections of the human heart. A substantial right, therefore, not to be forfeited or ignored except in some way or for some reason, established or recognized by the law of the land. A most impressive illustration of the principle and its proper application is afforded in the recent case of *Newsome v. Bunch,* 144 N. C., p. 15. In that case the child, on the death of its mother, and at the age of five months, had been left by the father with its grandparents and had remained with them for seven years. It had been well treated and was most advantageously placed, and the tenderest affection existed between the child and its grandparents. The father, too, was shown to be worthy, and there had been no abandonment. The child was awarded to the father and *Associate Justice Walker,* delivering the opinion, said: "But as a general rule, and at the common law, the father has the paramount right to the control and custody of his children, as against the world; this right springing necessarily from and being incident to the father's duty to provide for their protection, maintenance and education. 21 A. and E. Enc., 1036; 1 Blackstone (Sharswood), 452, and note 10, where the authorities are collected." And further: "It appears in this case that the child is under ten years of age, and that the petitioner and the respondents are equally qualified in every respect as fit and proper persons with whom to entrust the care and custody of the child, and further it is found as a fact that the father has in no way surrendered his natural and preferred right to such custody. Under these circumstances we

are unable to see why the petitioner is not entitled to have the custody of the child awarded to him, as was done by order of the court below. It would seem that the case comes directly and clearly within the decision of this Court in *Latham v. Ellis,* 116 N. C., 30, if it is not also substantially covered by the provisions of Revisal, secs. 180 and 181. See also *Musgrove v. Kornegay,* 52 N. C., p. 71; *Harris v. Harris,* 115 N. C., p. 587; *Ashby v. Page,* 106 N. C., p. 328; *In re Lewis,* 88 N. C., 31; *Thompson v. Thompson,* 72 N. C., p. 32, where the law in regard to the father's right of custody in respect to his child is discussed by the Court in its different phases as presented by the facts of those cases. There is no legal duty or obligation resting upon the grandfather to support and educate his grandchild, whereas the father does rest under such an obligation. This fact should have some weight with the court in deciding a controversy between them as to the child's custody, apart from the natural claim the father has to the first consideration, as the death of the grandparent or his refusal longer to care for the child might leave the latter without any natural guardian or protector and result in his becoming a charge upon the community. While the court, in the exercise of a sound discretion, may order the child into the custody of some person other than the father, when the facts and circumstances justify such a disposition of the child, we do not think that any such case is presented in this record as should induce us to adopt that course and except this case from the general rule. The father has done nothing by which he has incurred a forfeiture of his right to the custody of his offspring."

In the present case, the court finds that Simon Green and his wife, the petitioner and mother of the child "are respectable colored people and are capable of rearing and providing for the child."

There has been no abandonment of the child by the mother, such as would forfeit her rights under the Revisal, sec. 180, nor are there any facts found from which such abandonment could be inferred.

On this finding, therefore, the authorities cited and the reason upon which they are properly made to rest are decisive and re-

quire that the judgment of the court below be reversed and the child awarded to the petitioner.

We were referred by counsel for the respondents to the case *In re Samuel Parker,* 144 N. C., p. 170, as an authority for the position that a court will not determine the right to a child on habeas corpus proceedings. But there is nothing in the decision rendered in that case which supports such a position when the child is of such tender years that it has not the discretion or sufficient intelligence to determine for itself the question of its proper placing. In *Parker's case* the parents of the child were both dead and the question was between a guardian recently appointed and its aunt who had reared and maintained the child from its birth, and it clearly appeared that the best interest of the child required that it should remain with the aunt. In that case, too, it was shown that the child was eleven years of age and of sufficient intelligence for its wishes to be given some weight in the matter. The decisions are numerous with us, and they are in accord with accepted doctrine that the court in habeas corpus will consider and determine the rightful custody and proper placing of infant children. *Stokes v. Cogdell,* at present term; *Newsome's case, supra; In re Hugh D'Anna,* 117 N. C., p. 462; *Latham v. Ellis,* 116 N. C., p. 30; *Thompson v. Thompson,* 72 N. C., p. 32.

On the authorities referred to and for the reasons given, the judgment of the lower court is reversed, and this will be certified to the end that the child be awarded to the mother.

Reversed.