IN RE MERCER FAIN, AN INFANT.

(Filed 22 December, 1916.)

**Habeas Corpus—Custody of Child—Rights of Father.**

In proceedings in *habeas corpus* by the father for the care and custody of his motherless infant child, the father is entitled thereto as a matter of right, unless it appears that he is an unfit or unsuitable person to whom to intrust its welfare; and when it is made to appear that he is financially able to take care of the child and will suitably provide for its physical, mental, and moral welfare, it is error for the judge hearing the matter to deny the prayer of his writ and award the custody to the two grandmothers of the child, alternately, though they are of most excellent character and suitable for the charge.

WALKER, J., concurring; CLARK, C. J., dissenting.

PROCEEDING in *habeas corpus*, before *Long, J.*, 13 June, 1916, in the Superior Court of CHEROKEE County. Upon the hearing his Honor rendered judgment, from which the petitioner, W. Mercer Fain, appealed.

*Dillard & Hill for the petitioner.*
*Witherspoon & Witherspoon and M. W. Bell for respondent.*

BROWN, J.   The petitioner is the father of W. Mercer Fain, Jr., born 10 February, 1915, and now in the custody of the respondent, C. M. Wofford, who was the father of the child's mother, which said mother died on 1 March, 1916.

Upon the hearing before his Honor, Judge Long, the custody of the child was awarded to the two grandmothers, six months to each.   The evidence and findings of fact show that the petitioner separated from his wife before her death and that he had a serious disagreement with his father-in-law, the respondent.   There is no evidence that the petitioner intended to abandon his child and there is no evidence or finding of fact that he is a man of bad character and unsuitable to have the care of his infant child.   On the contrary, it appears to be uncontradicted that he lives with his parents, who are people of good character and well-to-do financially; that he is well able financially to care for the child, and that his mother, Mrs. Fain, has agreed to rear the child for her son.   His Honor finds as a fact that Mrs. Fain is a woman of most excellent character, and awards the custody of the child to her for six months of the year.   It is true, in matters of this character the welfare of the child is the chief consideration of the court, but the father has certain natural rights which the courts have always respected.   The fact that he had a difficulty with his father-in-law and did not live with his wife at the time of her death does not take away from him the ordinary right of a father to the care and custody of his child.

In *Latham v. Ellis,* 116 N. C., 30, a case very similar to this, the Court said: "In North Carolina the father has always been entitled to the custody of his children against the claims of any one except those to whom he may have committed their custody and tuition by deed (sec. 1562 of the Code); or unless he is found to be unfit to keep their charge and custody by reason of his brutal treatment of them or his reckless neglect of their welfare and interests, when their custody will be committed to some proper person on application to the courts."

This question is fully discussed by *Mr. Justice Walker* in *Newsome v. Bunch,* 144 N. C., 15, and by *Mr. Justice Hoke* in the case of *Mary Jane Jones,* 153 N. C., 312, and the right of the father to the custody of his child is recognized and sustained.   Upon the findings of fact and the evidence in the case, we think his Honor erred in denying the right of the father to the custody of the child.   If it can be shown that the father is unsuitable and incapable of taking care of his child, then those who are interested in it may apply to the courts to change its custodian.

In the record before us there is no finding of fact and no evidence which justifies the court in denying the legal rights of the father.

The cause is remanded with instructions to enter judgment in accordance with this opinion.

Reversed.

WALKER, J., concurring: I do not think it has been held by this Court that the father's right to the custody of his infant child is absolute or unquestionable. He has the preferred or paramount right, but he may lose it by his conduct or other causes resulting in unfitness. In *Newsome v. Bunch*, 144 N. C., 15, we said that this preferred right of the father was based upon his duty to protect his child and provide for its maintenance and education, which obligation, in no legal sense, rests upon its grandparents. This fact should have some weight with the court in deciding between the contestants for the child's custody, apart from the natural claim of the father to the first consideration, as the death of the grandparents, or their inability to care for the child, might leave it without adequate protection and support. "The father, and on his death the mother, is generally entitled to the custody of the infant children, inasmuch as they are their natural protectors for maintenance and education. But the courts of justice may, in their sound discretion and when the morals, safety, or interests of the children strongly require it, withdraw the infants from the custody of the father or mother and place it elsewhere." This was said by Chancellor Kent in his Commentaries, vol. 2, p. 205, and we indorsed his statement of the law in *Latham v. Ellis*, 116 N. C., 30, and *In re Turner*, 151 N. C., 474.

In this case there is a finding which reflects no credit upon the father if it is viewed in one permissible aspect; but there is no finding of the main, ultimate, and essential fact that the father is an unfit person to have the custody, nor is there any finding of facts from which we can, or rather from which we must necessarily infer the material fact, as if it had been found in so many words. It might have been better, in the exercise of our discretion, to have required the essential fact to be found definitely before proceeding to pass upon the rights of the parties; but in the absence of a specific finding of such fact, the preferred right of the father has not been impaired, and the case is brought within the principle as stated in the concluding words of *Newsome v. Bunch*, 144 N. C., at p. 18: "While the court, in the exercise of a sound discretion, may order the child into the custody of some person other than the father, when the facts and circumstances justify such a disposition of the child, we do not think that any such case is presented in this record as should induce us to adopt that course and except this case from the general rule. The father has done nothing by which he has incurred a forfeiture of his right to the custody of his

*In re* FAIN.

offspring. There is no room for the exercise even of a sound discretion in favor of the grandparents who now have possession of the child. Speaking for himself, and not committing the Court to his view, the writer of this opinion would hesitate to remove the child from its present custody, if the law were more elastic and we were vested with a larger discretion than is given by the law; but we must follow the precedents and the general principles of justice established by them, though the result may be contrary to what we may consider as the real merits of the particular case, and though by the facts, even as found by the court, our sympathies may be enlisted in behalf of the grandparents. The insistence upon his strict right under the circumstances may not be very creditable to the petitioner, yet the law is inexorable in such a case, and cannot be made to yield in deference to a mere sentiment or to a tender regard for the feeling of one of the parties; nor are we permitted to exercise an arbitrary discretion."

CLARK, C. J., dissenting: The court found as a fact that the little child is 20 months of age; that the mother is dead; that the child was born at the residence of the mother's father; that the father separated from his wife and was not present at the birth of the child nor at the death and burial of his wife; that the mother and father did not live happily together and that the father is not able "to bestow that particular care and personal attention on the child which is necessary that it should have at this particular period of its life, and that it is the court's duty to say that the child shall have as nearly as can be the attention of some female who will in some degree take the place of its dead mother."

The court further found that Mrs. C. M. Wofford, the mother of the dead mother of the infant, and Mrs. Fain, the mother of the father, are both women of character, fit and suitable to take care of the child, and the court awarded them the custody of the child until it should attain the age of 5 years, alternately 6 months, each, at a time. His Honor, with all the facts before him more fully than they can be presented to us on the record, has so adjudged, and it would seem that his decision is in accordance with a reasonable view of the welfare of the child, and it is certainly within his power as prescribed by Revisal, 1853, which provides that in a contest over the custody of a child "between parents who are living in a state of separation without being divorced" the court may award the charge of the child "with such provisions and directions as will, in the opinion of the court, best promote the interests and welfare of the child," subject to modification of the order at any time by the court.

*In re* FAIN.

The attitude of society, and in consequence of the law, both by statute and in judicial decisions, has been much changed from the common law, when the wife was the chattel of her husband. When, as in this State till 1868, the property of the wife passed to the husband by virtue of the marriage and her person was subject to chastisement at his will (until the decision of the Court in 1874 which abolished it, *S. v. Oliver,* 70 N. C., 60), it was natural that the custody of the child should be deemed also the absolute right of the father, who could will away its custody and guardianship from the mother, after his death, though she had borne the child in agony and endured the care of bringing it up. Revisal, 1853, now puts it in the sound discretion of the court to award the custody to any fit person. It would seem very certain that if the mother were still living no court in this day would take the child, 20 months old, from the custody of its mother to give it to the father, who had shown such indifference at the birth of the child. It would also seem plain that the father is not a fit person to be entrusted with its care at this tender age. Moreover, the judge so finds as a fact, and we are bound by the findings of the facts by the judge. *Britt v. Board of Canvassers, post,* 797.

Whatever may be said of the division of custody between the two grandmothers, this is not unusual in such cases, and certainly ought to satisfy the father, since his mother, with whom he lives, will have the custody of the child half the time. It might be well that the mother of the dead mother of the child ought to have custody of the child all the time. But his Honor thought differently, and we should respect the soundness of his judgment. Certainly the father has no ground to complain. As the order is subject to modification at any time upon cause shown, it would seem that this judgment should stand unless and until it is modified by some other Superior Court judge upon evidence adduced which should satisfy him of the propriety of a change. Upon this record I am satisfied that his Honor acted for the best interests of the child of 20 months of age in awarding its custody to its two grandmothers.

In *Newsome v. Bunch,* 144 N. C., 16, *Walker, J.,* after stating that at common law the father had the absolute right to the custody of his children, said that now "The welfare of the infants themselves is the polar star by which the courts are to be guided to a right conclusion, and, therefore, they may, within certain limits, exercise a sound discretion for the benefit of the child, and in some cases will order it into the custody of a third person for good and sufficient reasons. *In re Lewis,* 88 N. C., 31; Hurd on Habeas Corpus, 528-529; Tyler on Infancy, 276-277; Schouler on Domestic Relations, sec. 428; 2 Kent's Com., 205."

*In re Turner,* 151 N. C., 474, this Court held, *Walker, J.;* that in the exercise of a sound legal discretion the court may order the child in the custody of some third and fit person against the claims of both the father and mother. This last case is a full consideration of the modern and humane rule that the welfare of the child and not the absolute rule of the father is the guide. This is cited with approval, *Howell v. Solomon,* 167 N. C., 591. The duty of the support of the child is upon the father, but it does not necessarily follow, as at common law, that he is entitled to its custody. The judge here finds as a fact, and there is evidence and other findings of fact to sustain him, that he is not a fit person to be entrusted with the care of this baby, and in his sound discretion has awarded its custody to its two grandmothers. The only objection that can be found with this reasonable and natural order is the alternation of the custody between them, and if this should be found by a subsequent judge, upon evidence adduced before him, not to operate in practice for the best interests of the child, the order can be changed.