ANNIE McINTOSH CLEGG v. I. N. CLEGG.

(Filed 12 September, 1923.)

1. Appeal and Error—Findings—Habeas Corpus.

   The Supreme Court, on appeal, is bound by the findings of fact by the Superior Court judge in *habeas corpus* proceedings, if supported by any competent evidence.

2. Habeas Corpus—Husband and Wife—Custody of Children.

   Where the husband and wife are living in a state of separation, without divorce, the Superior Court has jurisdiction to award the custody of the minor children of their marriage to either the husband or the wife for

such time, under such provisions, restrictions and directions as will, in the opinion of the court or judge, best promote the interest and welfare of the children, and retain the cause, and thereafter annul, vary or modify the same on good cause shown. C. S., sec. 2241.

**3. Same—Courts—Jurisdiction—Juvenile Courts.**

The jurisdiction of the Superior Court or judge thereof in *habeas corpus* proceedings between husband and wife, living apart without divorce, where the custody of the minor children of their marriage is claimed by each of them, is not ousted or interfered with by the jurisdiction given by statute to the Juvenile Court.

**4. Appeal and Error—Courts—Jurisdiction—Habeas Corpus—Supreme Court—Supersedeas.**

Upon appeal to the Supreme Court from an order of the judge of the Superior Court in *habeas corpus* proceedings between husband and wife for the custody of the minor children of the marriage upon petition of the wife, living by mutual consent separated from her husband, without divorce, it is within the power of the Supreme Court, upon notification to the adverse party to appear before one of the Justices, and after a regular hearing, for the Justice to allow a *supersedeas* bond in a fixed amount, to stay the judgment of the lower court pending appeal, and by consent to set the hearing after the call of a certain district in the Supreme Court in term.

**5. Habeas Corpus—Husband and Wife—Custody of Children.**

While as a general rule and at common law the father has *prima facie* the paramount right to the control and custody of his minor children until they arrive at age, the mother, in *habeas corpus* proceedings against her husband, may be allowed the superior claim when both are equally worthy and it is shown that the welfare of their children requires it.

**6. Same—Appeal and Error.**

When the Superior Court judge has entered judgment in *habeas corpus* proceedings between husband and wife, and has found the facts upon which his judgment was based, and both parties appeal, the Supreme Court, in its sound legal discretion, may review the judgment, and affirm, reverse or modify it.

**7. Same — Nonresident Wife — Jurisdiction — Bond — Apportionment of Custody of Children.**

Upon the wife's petition in *habeas corpus* it was made to appear that she and her husband were living apart by mutual consent, but not divorced, when she carried the minor children of their marriage to live with her in Virginia, from which place the husband surreptitiously took them back to his home in this State. Each were equally worthy to have their custody and control, and the welfare of the children was equally safeguarded: *Held*, proper to order a division of the time of the children between the parents, with full right of each to visit and associate with them when living with the other, requiring of the wife a bond in a certain sum, conditioned upon her not taking the children out of the State and complying with the order of the court, made payable to the State of North Carolina, and filed with and approved by the clerk of the Superior Court, the cause retained to be further determined on change of conditions properly established.

**8. Same—Appeal and Error—Costs.**

On this appeal from the judgment of the Superior Court judge in *habeas corpus* proceedings, brought by the wife against her husband for the control and custody of the minor children of their marriage, the costs of the appeal and hearing are taxed against the respondent, with order that the cost in the lower court be made out and judgment entered by the clerk thereof.

STACY, J., dissenting.

THIS was a *habeas corpus* proceeding, heard before *Devin, J.*, at chambers, at Lumberton, N. C., 15 June, 1923.

Appeal by plaintiff (petitioner).

Appeal by defendant (respondent).

*McLean, Varser, McLean & Stacy for petitioner.*
*H. F. Seawell and McIntyre, Lawrence & Proctor for respondent.*

CLARKSON, J. The essential facts of the case are as follows:

The prayer of the petitioner, Annie McIntosh Clegg, the wife of the respondent, was that Ann Monroe, Margaret and Archie Clegg, her children, be delivered to her "for her care and custody in accordance with the agreement between the two."

She alleges that "on or about the 13th day of September, 1922, in an effort to reconcile the difference between petitioner and respondent, and to adjust the relationship that would exist between them in the future, the petitioner and respondent agreed, at her home near Richmond, Va., that the petitioner should have the possession, care and custody of her two girls, Ann Monroe and Margaret, and her infant son, Archie; and in order to consummate this agreement, petitioner agreed to return with the respondent to North Carolina and stay with him for a week or ten days, at which time it was agreed that she would return to the home of her mother at Richmond, Va., and take with her the infant son of the petitioner and respondent."

She alleges that she carried out her part of the agreement, but that the respondent did not, and alleges in detail his failure and conduct towards her in this respect, and that in violation of the agreement he even went to her home near Richmond, and, unknown to her, took the two girls, and the respondent now has all four of the children born of the marriage—Newton, aged 12; Ann Monroe, aged 10; Margaret, aged 7, and Archie, aged 5, living with him at his home in the town of Rowland. From the findings of the court below, it is unnecessary in the decision of this case to recite in detail the allegations of wrongs done her by respondent.

The respondent, I. N. Clegg, denies this agreement, and denies "that petitioner returned to North Carolina under any agreement or arrange-

ment with the respondent whereby the petitioner should be permitted to take the children or any of them away from the care and custody of the respondent, but admits that the petitioner did return to North Carolina upon what he presumed to be a reconciliation and with the sincere hope upon the part of respondent that their home life might be improved and made into what it should be."

He denies that he was in any way responsible for the causes which petitioner claims forced her from his home at Rowland to the home of her mother at Richmond. The respondent claimed that the two girls were taken to the home of their grandmother near Richmond ostensibly upon a visit, and that he went and got them. He admitted that he took them unknown to the petitioner, but in the daytime; that the children were in the country, and "he spoke to said children, who rushed to him, put their arms about his neck, kissed him, and gladly accompanied him back to their home in North Carolina"; that he placed them in the graded school at Rowland, where they had been previously going to school.

The respondent admits the children are with him, and that "they are happy, contented and are receiving the best of care possible under the unfortunate circumstances existing, which have been caused by no fault of respondent; and it is admitted that the respondent has refused to abandon his duty and surrender the care and custody of said children to the petitioner, or to permit her to take them away from the home of the respondent to be a care and burden to their old grandmother, who is very aged and unable to personally care for them."

Respondent "prays that the writ of *habeas corpus* may be dismissed, and that said children may be left in the custody of the respondent, and their care, custody and tuition may be left with the respondent while the petitioner chooses to remain away and refuses to reside with the respondent and in the home provided by him for said children."

The court found the following facts:

"The court finds as a fact, from the affidavits and oral testimony offered, that the petitioner and respondent are mother and father, respectively, of the children named in the petition, and that the father and mother, without divorce, are living in a state of separation, the mother now residing with petitioner's mother in Chesterfield County, near the city of Richmond, Va., and the respondent is now residing in Rowland, Robeson County, North Carolina, and that the children are now with their father in said county.

"The court finds that each of the parties hereto is a person of good moral character, and that there is nothing in evidence reflecting on either of said parties, except incompatibility of temper and disposition, and the differences and friction caused thereby; that the separation is

due to faults on both sides, but that there is nothing, in the opinion of the court, that Christian forgiveness and forbearance could not overcome; but that the court realizes that it is not in the power or jurisdiction of the court to do more than to find that there is nothing in the evidence adduced in the case which would in any way militate against or prevent a complete reconciliation and cohabitation upon the part of the petitioner and respondent.

"The court finds that the failure of the respondent to protect his wife from being frightened and terrorized by the visitation in their home in Rowland, and the circumstances surrounding it, was such as would prevent the petitioner from living with her husband at that place, and that her failure to return and live with him there should not be held against her as an abandonment.

"The court finds that the respondent, on or about the first day of November, 1922, went to the city of Richmond, where the petitioner was residing with two of the children, and surreptitiously obtained possession of said children and returned with them to his home in Rowland.

"The court had a private talk with the children, in addition to the evidence offered, in the effort to ascertain what would be for the best interest of said children.

"The court finds that the respondent is a capable and suitable person to have the custody of said children, and that said children are happy and are well provided for in their present home. The respondent is a minister of the gospel, in the active ministry, serving four churches, each of which has adopted resolutions testifying to his character as a minister and a man.

"The petitioner is residing now with her mother in Chesterfield County, near Richmond, Va. Her mother is a woman 71 years of age, worth about $40,000, has a large, commodious home, and is a woman of high Christian character. The brothers of petitioner are men of standing and character. The home where petitioner now resides is in every way a suitable place in which the mother may be associated with and know and be known to her children.

"The court is of opinion that the children, in the interest of their welfare, should be permitted to be associated with and to know their mother.

"The court finds that the petitioner is a woman of good standing and in every way suitable for the association with her children.

"The court finds that the petitioner, on 3 August, 1922, left the home of the respondent, taking with her the two daughters to her mother's, in Virginia; that while in respondent's home the differences and unpleasantness between petitioner and respondent were not sufficient, in law, to entitle her to a divorce from bed and board, nor to constitute an abandonment upon his part; that the respondent has always been a

dutiful and loving father to said children, and has means sufficient to reasonably provide for their nurture and upbringing; that the mother is a dutiful and loving mother and, in the opinion of the court, should not be prevented from an opportunity to associate with and to be known by her own children, subject to the superior custody of the children to the father.

The order of the court is as follows:

"This cause coming on to be heard, and being heard, before W. A. Devin, judge presiding over the courts of the Ninth Judicial District, at chambers in Lumberton, North Carolina, and this, the 15th day of June, 1923, and after consideration of the pleadings, affidavits, oral testimony and argument of counsel, the court finds that the custody of said children should be awarded the respondent, but that the welfare of the children, Anne Monroe, Margaret, and Archie Clegg, would be subserved by their spending a part of their time with the petitioner and part thereof with the respondent, and to that end it is ordered, adjudged and decreed that the custody of said children is awarded to the respondent, I. N. Clegg, upon the condition that the said children be allowed to reside with and associate with their mother, at the home of the petitioner's mother in Chesterfield County, near the city of Richmond, Va., until the first day of September, 1923, at which time the respondent shall have the care and custody of said children until the first day of June, 1924, and on the first day of June, 1924, and each year thereafter, until otherwise ordered, the said children shall be permitted to be and reside with their mother until the first day of September, 1924, and each year thereafter until otherwise ordered.

"The court finds that the respondent is a suitable person to have the care and custody of said children, but that their welfare would be promoted by permitting them to associate with and to know their mother, whom the court also finds to be a suitable and competent person.

"The expense of transporting the aforesaid children from the home of the respondent to the home of the petitioner shall be borne by the petitioner in each instance, and the expense of transporting the children from the home of the petitioner to the home of the respondent shall be borne in each instance by the respondent. Either the petitioner or the respondent shall have the right to visit said children at any time, whether in the custody of the petitioner or the respondent.

"Should conditions in the home life of either the petitioner or respondent materially change from what they now are, this order is made without prejudice to the right of either party to move the court to reopen this hearing, or for a modification of this order.

"The permission that said children may reside with their mother in the State of Virginia shall be conditioned upon the petitioner entering

into a bond in the sum of $5,000, to be approved by the clerk, conditioned upon her compliance with this order.

"The findings of fact by the court, upon which this order is based, are hereto annexed and made a part of the decree.

"It is ordered that respondent produce said children at Lumberton on 21 June, 1923, at 4 p. m., for compliance with this order.

"Done at Lumberton, N. C., the 15th day of June, 1923."

"Pending the appeal, so much of the order permitting the temporary removal of the children to Virginia is suspended, and pending said appeal the mother shall be permitted to be with and associate with her said children at the home of her brother and their uncle, Dr. D. M. McIntosh, at Old Fort, N. C., and the home of said McIntosh is found to be a suitable place for this purpose. And the children to be delivered to their mother for this purpose at the time and place mentioned in the order of the cause. And the said children shall not be allowed to be carried out of the State pending appeal.

"Respondent requests the court to fix amount of *supersedeas* bond to vacate this order pending appeal. Request refused, and respondent excepts and appeals to Supreme Court."

On 16 June, 1923, petition for writ of *supersedeas* was filed in Supreme Court, and notice was duly given to counsel for petitioner that the respondent would apply for such writ to his Honor, Walter Clark, Chief Justice, at chambers at Raleigh, N. C., on 18 June, 1923. On the return day, all parties, with their counsel, appeared, and upon consideration of respondent's petition for writ of *supersedeas,* and after argument of counsel, his Honor granted such writ, and respondent filed *supersedeas* bond in the sum of $5,000, as required by order of the Chief Justice. By consent of counsel of both parties, the Chief Justice also set the hearing of the appeal for the end of the call of the First District at Fall Term, 1923.

The court, on account of the controversy between a man and his wife with a family of four children, has recited the essential facts of difference between them as mildly as possible to determine the merits of the cause.

This Court is bound by the findings of fact made by the court below, if such findings are supported by any competent evidence. This is now the well-settled law of this State. In this case there was competent evidence to support all the findings of the court below.

*Stacy, J.,* in *In re Hamilton,* 182 N. C., 47, says: "The findings of fact made by the judge of the Superior Court, founded as they are upon competent evidence, are also conclusive on us (*Stokes v. Cogdell,* 153 N. C., 181), and we must therefore base our judgment upon his find-

ings." This case was on petition to rehear (*In re Hamilton,* 183 N. C., 57), and the Court adhered to its former decision by dismissing the petition.

The respondent's first exception is to the refusal of the court below to dismiss this proceeding, or else to remand same to the Juvenile Court of Robeson County, as the controversy was one involving the custody of children under the age of sixteen, and the Superior Court had no jurisdiction.

The statute is plain in a case of this kind, and the Superior Court had jurisdiction. .The findings of the court were "that the father and mother, without divorce, are living in a state of separation."

Chapter 41, C. S. (*Habeas Corpus*), sec. 2241, provides: "When a contest shall arise on a writ of *habeas corpus* between any husband and wife who are living in a state of separation, without being divorced, in respect to the custody of their children, the court or judge, on the return of such writ, may award the charge or custody of the child or children so brought before it either to the husband or to the wife, for such time, under such regulations and restrictions, and with such provisions and directions as will, in the opinion of such court or judge, best promote the interest and welfare of the children. At any time after the making of such orders, the court or judge may, on good cause shown, annul, vary or modify the same." *In re Natalie Blake,* 184 N. C., 278.

Respondent's second, third, and fourth exceptions are based on the court's findings of certain facts complained of. This is a matter in the sound discretion of the court below, and as there was some evidence on which the court below could find as it did, this Court is bound by the findings. *In re Hamilton, supra.* "The Supreme Court has jurisdiction to review, upon appeal, any decision of the court below upon any matter of law or legal inference. And the jurisdiction of said court over 'issues of fact' and 'questions of fact' shall be the same exercised by it before the adoption of the Constitution of 1868, and the court shall have the power to issue any remedial writs necessary to give it a general supervision and control over the proceedings of the inferior courts." Const. of N. C., Art. IV, sec. 8.

The fifth and seventh exceptions of respondent were to the court below refusing to allow *supersedeas,* and to the judgment as signed. The action of the Chief Justice in granting the writ of *supersedeas* pending the hearing of this appeal renders any discussion of these exceptions unnecessary, and is in accord with the practice heretofore adopted by this Court. See *Page v. Page,* 166 N. C., 90.

The sixth exception of respondent was to that part of the judgment allowing the petitioner to have the custody of the children from June

to September each year, and allowing petitioner to take the children beyond the jurisdiction of the court.

In the view taken by the Court in this case, it will be unnecessary to discuss this exception. Nor will it be necessary to discuss petitioner's exceptions *seriatim*. The court below has found the material facts pertinent to the controversy.

*Walker, J.*, in *In re Turner*, 151 N. C., 474, says: "We repeat what we said in *Newsome v. Bunch*, 144 N. C., 16, that the father is, in the first instance, entitled to the custody of his child. But this rule of common law has more recently been relaxed, and it has been said that where the custody of children is the subject of dispute between different claimants, the legal rights of parents and guardians will be respected by the courts as being founded in nature and wisdom, and essential to the virtue and happiness of society; still the welfare of the infants themselves is the polar star by which the courts are to be guided to a right conclusion; and, therefore, they may, within certain limits, exercise a sound discretion for the benefit of the child, and in some cases will order it into the custody of a third person, for good and sufficient reasons. *In re Lewis*, 88 N. C., 31; Hurd on Habeas Corpus, 528, 529; Tyler on Infancy, 276, 277; Schouler on Domestic Relations, sec. 305, at p. 428; 2 Kent's Com., 205. But, as a general rule, and at the common law, the father has the paramount right to the control of his children as against the world; this right springing necessarily from and being incident to the father's duty to provide for their protection, maintenance, and education. 21 A. & E. Enc., 1036; Blackstone (Sharswood), 452, and note 10, where the authorities are collected. This right of the father continues to exist until the child is enfranchised by arriving at years of discretion, when the empire of the father gives place to the empire of reason. 1 Blk., 452."

*Hoke, J.*, in *In re Means*, 176 N. C., 307, says: "On the question thus presented, it is the established principle in this State that parents have *prima facie* the right to the custody and control of their infant children—the father, preferably, when it appears that he is fitted for the position and its responsibilities; though, as between the two, even when equally worthy, the mother may be allowed the superior claim when it is shown that the welfare of the child requires it. The doctrine and the basic reason for it, and the authorities with us upon which it rests, are set forth in the last case upon the subject, as follows: 'It is fully recognized in this State that parents have *prima facie* the right of the custody and control of their infant children, the natural and substantive right not to be lightly denied or interfered with, except when the good of the child clearly requires it.' *In re Mercer Fain*, 172 N. C., 790; *In re Mary J. Jones*, 153 N. C., 312; *Newsome v. Bunch*, 144

N. C., 15; *Latham v. Ellis,* 116 N. C., 30. . . . And, further, 'The best interest of the child is being given more and more prominence in cases of this character, and on special facts has been held the paramount and controlling feature in well-considered decisions,' citing *Bryan v. Lyon,* 104 Ind., 227; *In re Welch,* 74 N. Y., 299; *Kelsey v. Greene,* 69 Conn., 291; *Atkinson v. Downing,* 175 N. C., 244.''

From the decisions of this State we have it said:

1. As a general rule, and at common law, the father has a paramount right to the control and custody of his children, and this continues until the children arrive at age. He is bound by law to provide for their protection, maintenance, and education.

2. That it is an established principle in this State that parents (both father and mother) have *prima facie* the right to the custody and control of their infant children—the father, preferably; and even as between the two, when equally worthy, the mother may be allowed the superior claim when it is shown the welfare of the children requires it.

3. That the welfare of the infants themselves is the polar star by which the courts are to be guided. In some cases it is the paramount and controlling features.

Under the findings of fact by the court below, and from an appeal by both the petitioner and respondent, this Court has the power, in its sound and legal discretion, to review the judgment of the court below, and can affirm, reverse, or modify it. This responsibility is great, as it deals with the lives of a father, mother, and four infant children. In this matter we are not passing on the material things of this world, but the most sacred thing connected with our social fabric—the home, father, mother, children. Our republic is founded upon the consent of the governed. The home is the rock foundation for the governmental structures. If the unity of the home is weak, some day the structure may crumble. The rapid strides in the material prosperity of this commonwealth are such that all should be thankful, yet we pause. The Bureau of the Census (United States Department of Commerce) shows, in 1916 there were 668 divorces in North Carolina; 1922, there were 1,317. In the comparative years the marriages have been about the same, while divorces were increased 100 per cent.

From the record in this case, there is no divorce nor the suggestion, but a separation. The court below was cautious and careful not to widen this unfortunate and deplorable separation. The court found:

"That the respondent is a capable and suitable person to have the custody of said children, and that said children are happy and well provided for in their present home. The respondent is a minister of the gospel, in the active ministry, serving four churches, each of which has adopted resolutions testifying to his character as a minister and a

man. . . . That the children, in the interest of their welfare, should be permitted to be associated with and to know their mother. . . . That the petitioner is a woman of good standing and in every way suitable for the association with her children. . . . That the respondent had always been a dutiful and loving father to said children, and has means sufficient to reasonably provide for their nurture and upbringing; that the mother is a dutiful and loving mother, and, in the opinion of the court, should not be prevented from an opportunity to associate with and to be known by her own children, subject to the superior custody of the children to the father."

This is a matter so vital to the welfare of so many concerned, it may not be amiss to call attention to the solemn admonition given at this marriage altar :

"Into this holy state these two persons are come to be joined. Therefore, if any man can show any just cause why they may not lawfully be joined together, let him now declare it, or else hereafter forever hold his peace.

"Hear now what holy scripture doth teach as touching the duty of husbands to their wives, and of wives to their husbands.

"Husbands, love your wives, even as Christ also loved the church and gave Himself for it, that He might sanctify and cleanse it with the washing of water by the word. So ought men to love their wives as their own bodies. He that loveth his wife loveth himself. For this cause shall a man leave his father and mother, and shall be joined unto his wife, and they two shall be one flesh.

"And, wives, submit yourselves unto your own husbands as unto the Lord. For the husband is the head of the wife, even as Christ is the Head of the Church. And He is the Saviour of the body. And again He saith, Let the wife see that she reverence her husband."

In considering the welfare of the children, the polar star, and the husband's paramount right to the control and custody of the children, let us not forget to consider the equal right of the mother. It was in Eden that she was made a "helpmeet for him." It was He who said, "Bone of my bone, and flesh of my flesh." It was a divine edict. "Therefore, shall a man leave his father and his mother and shall cleave unto his wife, and they shall be one flesh." She has walked through the valley of the shadow of death four times for love of him. There are those little children—two girls, who now know not a mother's tender care or caressing kiss. Yes, the welfare of the child is the polar star. As they kneel each night to say "Our Father who art in heaven," in the darkness, when the lights are out and the father gone, the heart-sobs are for the mother who bore them. Is it for their welfare that she is forgotten? The responsibility for their welfare is dual on both father

and mother. The God-given jewels belong to both. It was a great lawyer, Gamaliel, at whose feet Paul was taught. In citing Paul, it may be also the ideal of his great preceptor, "Nevertheless, let every man of you in particular so love his wife even as himself; the wife see that she reverence her husband." Ephesians, 5:33.

In the able argument of the attorneys in this case, one of the representatives of the petitioner was twitted as being a bachelor. One of the most beautiful tributes paid by man to woman was written by a bachelor: "As a vine which has long twined its graceful foliage about the oak, and been lifted by it into sunshine, will, when the hardy plant is rifted by the thunderbolt, cling around it with its caressing tendrils, and bind up its shattered boughs, so is it beautifully ordered by Providence that woman, who is the mere dependent and ornament of man in his happier hours, should be his stay and solace when smitten with sudden calamity, winding herself into the rugged recesses of his nature, tenderly supporting the drooping head, and binding up the broken heart." Washington Irving's "The Wife."

It appears from the facts in evidence, and the findings of the court below, that both parents are fit and proper persons to raise and care for their children. The order of the court below is modified as follows:

The Court finds that the custody of said children should be awarded the respondent, their father, but that the welfare of said children, Annie Monroe, Margaret and Archie Clegg, would be subserved by their spending a part of their time each year hereafter with the petitioner, their mother, and a part thereof with the respondent, their father, and to that end:

It is ordered, adjudged and decreed that the custody of said children is awarded to their father, I. N. Clegg, upon the condition that said children be allowed to reside with and associate with their mother, at the home of her brother and their uncle, Dr. D. M. McIntosh, at Old Fort, N. C., and the home of Dr. McIntosh is found to be a suitable place for the purpose, from the first day of June, 1924, until the first day of September, 1924, during which time the petitioner shall have the care and custody of said children, and during said summer months each year until otherwise ordered. That the petitioner, the mother, shall at all times during the time when the respondent, the father, has the custody of said children, from the first of September until the first of June of each year, have ingress and egress to the home of the respondent, her husband, to see said children, look after, nurse and care for them in such manner and way as will best promote the welfare of the children, but in no way impairing the authority of the respondent, the father, in the home. Either the petitioner or the respondent shall have the right

to visit the said children at any time, whether in the custody of the petitioner or the respondent. That the petitioner, before taking the children herein named each summer to the home of their uncle, Dr. D. M. McIntosh, shall give bond in the sum of $5,000 for the return of said children to the custody of their father on the first day of September of each year thereafter until otherwise ordered. That said bond shall be made payable to the State of North Carolina and be filed with the clerk of the Superior Court of Robeson County and approved by him, before the children are turned over to the petitioner for her care and custody of said children during the summer, the bond to be conditioned that she does not take the said children out of the State. That the respondent pay for the transportation of said children and their reasonable board during the summer months as fixed by the clerk of the Superior Court of Robeson County. That the respondent pay all the costs of this action. That this cause will be retained on the docket of the Superior Court of Robeson County, as this judgment is not intended to be a final determination of the rights of the parties touching the care and control of the children, and on change of conditions properly established the question may be further heard and determined. The appeal of the petitioner and the appeal of the respondent from the judgment of the Superior Court are modified in accordance with this opinion.

The costs of the appeal and the hearing will be taxed against the respondent; that of the lower court to be made out and judgment entered therefor by the clerk of the Superior Court of Robeson County.

Modified and affirmed.

STACY, J., dissenting: I regret very much my inability to concur in the disposition that is to be made of this cause. I am not in disagreement with any of the principles of law stated in the opinion of the Court, but my position arises from a different conception of the significance which should be given to some of the essential facts of the instant record.

The petitioner alleges that, for good and sufficient reasons, she can no longer live with the respondent as his wife. If this be true, the present judgment would seem to be a hard measure of justice for her and for her children. But the Court's decision, as I understand it, is based upon the hope that the healing balm of time, "the great softener of anger and soother of pain," will successfully dispel the fears upon which this allegation is made. I do not dissent from this hope, but to my mind it is too shadowy and holds out too little promise of fruit to serve as a controlling factor in determining the rights of the parties. I have a different estimate of the record. However, as the present order is subject to change or modification at any time, I shall not undertake to state now the full reasons for my dissent.