JOHN R. SPECK v. MIRIAM N. PARTRIDGE SPECK

No. 6910DC338

(Filed 23 July 1969)

**1. Statutes § 8—   retroactive effect**

Ordinarily, a statute will not apply to litigation pending on the effective date of the statute unless there is a legislative intent to the contrary.

**2. Divorce and Alimony § 22—   child support and custody — applicability of statutes**

G.S. 50-13.1 through G.S. 50-13.8, relating to the custody and support of minor children, do not apply to litigation pending on 1 October 1967, the effective date of the statutes.

**8. Divorce and Alimony § 22—   child support and custody — jurisdiction — child over 21**

Although child of the parties was 34 years old, was residing in another state and had not been adjudged incompetent, trial court had authority to award custody of and support for the child to the mother and to determine visitation rights of the father, where the parents were before the court and subject to its *in personam* jurisdiction and where there was psychiatric and medical evidence that the child was mentally and physically disabled.

**4. Parent and Child § 7—   father's duty to support child over 21**

The presumption that a child reaching the age of 21 will be capable of maintaining himself is rebutted by the fact of the child's mental or physical incapacity, and the obligation of the father to support the child continues. This rule is codified by G.S. 50-13.8.

**5. Divorce and Alimony § 18—   alimony without divorce — subsistence pendente lite — abandonment — allegations**

Wife's allegations to the effect that the husband was irritable and difficult to live with, that he had a fear of death, diseases and illness which affected the relationships with his son who was suffering from permanent brain damage and with the wife after she underwent surgery for removal of a malignant cancer, that the wife was forced to seek employment in another town to alleviate the financial position of herself and the children, that the husband told her to discontinue visits to the home and later sold the home without finding a new one, and that he secretly went to live in another state, *are held* sufficient to state a cause of action under [former] G.S. 50-16 for subsistence *pendente lite* in wife's cross-action for alimony without divorce on ground of abandonment.

**6. Divorce and Alimony § 18—   subsistence pendente lite — determination by judge**

In passing upon motions for subsistence *pendente lite*, the trial judge is expected to look into the merits of the action and determine in his sound legal discretion, after considering the allegations of the complaint and the evidence of the parties, whether or not the movant is entitled to the relief sought.

**7. Divorce and Alimony § 18— subsistence pendente lite — finding that husband was wrongdoer — presumption**

In a hearing under [former] G.S. 50-16 to award the wife counsel fees *pendente lite*, it is unnecessary for the trial judge to make finding of fact that the husband was a wrongdoer, since it will be presumed that the court, for purposes of the hearing, found that the husband had wrongfully abandoned the wife as alleged in the wife's cross-action.

**8. Divorce and Alimony § 24— visitation rights — jurisdiction**

Where both husband and wife were before the court, trial judge could properly establish visitation rights, regardless of the child's residence.

**9. Divorce and Alimony § 23— order requiring child support — validity**

Order requiring that the husband pay the wife for child support *pendente lite* the sum of $200 per month commencing 15 February 1969, and on or before the 15th day of each month thereafter, *is held* not impossible of being carried out in that the order was rendered on 17 February, since husband could have reasonably complied with the order by making the February payment at anytime after 17 February.

**10. Divorce and Alimony § 23— child support — review of judge's discretion**

The amount the husband is required to pay for the support of his child is determined by the trial judge in the exercise of his sound discretion, and his decision is not reviewable in the absence of abuse of discretion.

**11. Divorce and Alimony § 23— child support pendente lite — sufficiency of evidence**

Evidence that the income of the father was $888.65 per month and that he owned 24 acres of land, and that the expenses of his 34 year old son, who was mentally and physically disabled, consisted of vocational rehabilitation at $10 a week, psychiatric treatment at $60 a month, dental treatment at $5 a month, transportation at $25 a month and cost of an attendant at $120 a month, *is held* to support an award pendente lite of $200 per month for the support of the child.

**12. Divorce and Alimony § 18— counsel fees pendente lite — sufficiency of findings**

In determining an award of counsel fees *pendente lite* for the wife, trial court's finding of fact that the wife's monthly normal expenses are approximately equal to her income *is held* supported by evidence that the wife's monthly income is $1,333.34 and that her monthly expenses amounted to at least $1,263.03.

**13. Divorce and Alimony § 18— counsel fees pendente lite — reasonableness of award**

Although wife's yearly income amounted to $16,000, an award to the wife of counsel fees *pendente lite* in the sum of $1500 *is held* supported by evidence that (1) the wife's normal monthly expenses are approximately equal to her monthly income — such expenses resulting in large part from the care of a mentally and physically disabled son — (2) exten-

sive preparations for the hearing were necessitated by the son's condition, and (3) counsel has represented the wife throughout all the proceedings, including a trial which ended in mistrial.

APPEAL by plaintiff from *Ransdell, J.,* February 1969 Civil Session, WAKE County District Court.

John R. Speck (plaintiff) commenced this civil action to obtain an absolute divorce from Miriam N. Partridge Speck (defendant) on 10 January 1967. An amended complaint was filed on 15 March 1967 in which it was alleged that the plaintiff was a resident of the City of Raleigh, Wake County; the defendant was a resident of Haymarket, Prince William County, Virginia; they had been married on 25 August 1941 in Baltimore, Maryland; on 22 March 1963 they separated and they remained continuously separate and apart from each other "for more than one year next preceding the institution of this action"; they had one emancipated child, David Newcombe Speck (David), who was 34 years of age, and two emancipated adopted children.

An amended answer was filed by the defendant on 8 June 1967 in which it was admitted that the plaintiff and defendant were married and that they had "lived separate and apart since" 22 March 1963. It was alleged that the marriage ceremony had been performed in Charleston, South Carolina; "this separation was caused by plaintiff's unlawful and wilful abandonment of her"; and David was not emancipated. By way of a further answer and defense and a cross-action, it was alleged that they were first married on 15 September 1931 in Baltimore, Maryland; "a decree of divorce absolute was entered in behalf of this defendant by the Baltimore City Court of Baltimore, Maryland" on 24 September 1935; the decree awarded custody of David to the defendant; they "were again married on 25 August, 1941, in the State of South Carolina"; the defendant was "a dutiful and loving wife at all times"; the "plaintiff was always a distant and inapproachable husband"; he was irritable and difficult to live with; he "was guilty of acts of cruelty and misconduct which made defendant's life burdensome and intolerable"; he "failed and steadfastly refused to provide adequately or even decently for his family"; he "had an . . . illogical dread and fear of death, disease and illness", and this was manifested in his relationship with David, who was suffering from permanent brain damage and poor physical health, and in his relationship with the defendant after she underwent surgery for the removal of a "malignant cancer"; she was forced to seek employment in an effort "to alleviate and improve the economic and financial position of her-

self and her children"; she accepted employment in Haymarket, Prince William County, Virginia, "with the encouragement and acquiescence of plaintiff" who continued to live at their Springfield, Virginia, home: he later told her that she should discontinue visiting their home and should remain at her place of employment; the plaintiff sold their home in Springfield, Virginia, and made no attempt to find a new home in Haymarket, as he had previously agreed to do; he then abandoned the defendant and his family "and went secretly to the State of Maryland to live"; the "acts of cruelty, misconduct and abandonment by the plaintiff were done without any provocation whatever on the part of the defendant"; David is physically and mentally disabled and he "is absolutely dependent upon the defendant, . . . in whose care and custody he was left, for sustenance, care and support"; the plaintiff "has steadfastly refused and failed to make any contribution whatever toward the support of his wife and son David since the parties separated in 1963"; and he has threatened to cancel a policy of health, medical, surgical and hospital insurance which extends coverage to the defendant and David. She expressly pled the "abandonment by plaintiff in bar of plaintiff's right to the relief prayed for in the [amended] complaint". She sought reasonable support, maintenance and subsistence for herself and David and reasonable counsel fees *pendente lite*. She further sought an order *pendente lite* restraining the plaintiff from cancelling the insurance policy, *supra*. The answer was to be treated as an affidavit in support of her prayer and motion for relief *pendente lite*. Upon final trial, she sought a judgment for reasonable support, maintenance, subsistence and counsel fees, a permanent restraining order against cancellation of the insurance policy, and custody of David.

A reply to the further answer and defense and the cross-action was filed by the plaintiff on 11 July 1967, in which he alleged that "the separation was brought about by the abandonment of the plaintiff by the defendant"; "the marriage was not a happy one" because "the defendant was more interested in her career as a psychologist than being a wife and mother" and because she was domineering; he "remained constantly in debt in an attempt to supply the needs of his family and . . . applied all of his earnings to the support and maintenance" of his family; "the defendant received half of the gross sale price [of their home] less the commission therefrom which she converted to her own use"; "the defendant had refused to permit the plaintiff to have any control over [David]; that the defendant has humored said child to such an extent that he has never been required to obey anyone or to perform any task or work and that if he is not capable of supporting himself, it is a result of

the conduct of the defendant toward said son and not due to his mental and physical condition"; on the contrary, "David . . . is able and capable to work and earn sufficient sums to meet his living expenses if required to do so"; since "no guardian has been appointed for said child nor has said child been adjudicated incompetent", "the proper forum relating to David . . . is a guardianship proceeding, adjudication and ancillary procedure for support"; the defendant "has been earning in excess of $20,000.00 per year" and is not "in any dire financial need".

In his reply the plaintiff denied that the defendant was a loving and dutiful wife; the plaintiff was guilty of any misconduct or cruelty or had any dreads or phobia which "made the defendant's life burdensome or intolerable"; "he forced the defendant to seek outside employment" or gave her any encouragement to seek such employment; he agreed to find a new home in Haymarket after the house in Springfield was sold; he moved from Springfield to Maryland in secrecy; David was permanently disabled; or the plaintiff threatened to cancel any insurance policy.

A hearing was held and both parties testified. Judge Ransdell then entered an order under date of 17 February 1969. It was found as a fact that the plaintiff and defendant were married on 25 August 1941 in Baltimore, Maryland; "they have not lived together as husband and wife for at least six . . . years prior to the date of this hearing"; David is "so handicapped both mentally and physically as to be incapable of earning his livelihood; that he is in such condition mentally and physically as to require constant supervision, care, attendance and attention and is totally dependent upon the defendant"; David "has continuously been in the custody of the defendant", who "is a fit and proper person"; "it is in the best interest of . . . David . . . that he be placed in the custody of the defendant"; and the defendant's "normal expenses are approximately equal to her income". It was further found as a fact that the plaintiff instituted this civil action for divorce absolute and "[t]hat the matter has been placed on the trial calendar numerous times, finally being tried at the January 1969 Term of Wake County District Court, resulting in a mis-trial". It was thereupon concluded as a matter of law that David is incompetent and unemancipated; it is in his best interest to be placed in the custody of the defendant; "the defendant is entitled to receive from plaintiff support for said David . . . and counsel fees, pendente lite"; the "plaintiff should be restrained, pendente lite, from canceling or otherwise voluntarily allowing to lapse" the insurance policy, *supra.* It was then ordered that the defendant was to have custody of David; the plain-

tiff was to pay to the defendant *pendente lite* $200.00 per month for the use and benefit of David; the plaintiff was restrained *pendente lite* from cancelling or otherwise voluntarily allowing to lapse the insurance policy, *supra;* the plaintiff was to pay $1,500.00 for counsel fees incurred by the defendant.

To the signing and entry of this order, the plaintiff excepted and appealed to this Court.

*Vaughan S. Winborne for plaintiff appellant.*

*Joyner, Moore & Howison by Henry S. Manning, Jr., for defendant appellee.*

CAMPBELL, J.

The plaintiff's first contention is that the trial judge erred in entering an order as to the custody and support of David. It is argued that the trial judge lacked jurisdiction to enter such an order because David was a resident of Virginia; he was not a minor; he had not been adjudged incompetent; and the defendant had not been appointed his custodian or guardian.

**[1, 2]** Since this civil action was commenced on 10 January 1967, G.S. 50-13 applies, even though it was repealed and replaced by G.S. 50-13.1 through 50-13.8, which became effective from and after 1 October 1967. Unlike Chapter 1152 of the 1967 Session Laws, there is no provision in Chapter 1153 pertaining to pending litigation. However, there is nothing to indicate a legislative intent to apply the new statutes to pending litigation.

> "The General Assembly has the power to enact retroactive laws provided that they do not impair the obligation of contracts or disturb vested rights. There is no vested right in procedure, and therefore statutes affecting procedural matters solely may be given retroactive effect when the statutes express the legislative intent to make them retroactive. . . .

> Ordinarily, a statute will be given prospective effect only, and will not be construed to have retroactive effect unless such intent is clearly expressed or arises by necessary implication from its terms." 7 Strong, N.C. Index 2d, Statutes, § 8, p. 80.

> "Statutes ought not to act retrospectively and will not be so construed unless their terms require it. . . . A plain expression of legislative intent, that it shall have retroactive effect, is necessary. . . .

. . . 'There is always a presumption that statutes are intended to operate prospectively only, and words ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied. . . .' " *Comrs. v. Blue*, 190 N.C. 638, 130 S.E. 743.

". . . The rights of the parties [under the cross-action] are governed by G.S. 50-16, since this litigation began prior to the repeal of that statute by the Session Laws of 1967, chapter 1152. The 1967 Act provides expressly that it shall not apply to pending litigation." *Schloss v. Schloss*, 273 N.C. 266, 160 S.E. 2d 5.

[3]  Prior to the 1967 legislative changes, the Supreme Court had held that it was not necessary for a minor child to be in the jurisdiction in order to award custody and payment of "an allowance to the mother for the child's support". *Romano v. Romano*, 266 N.C. 551, 146 S.E. 2d 821. This could be done if both the husband and wife were before the trial "court and subject to its *in personam* judgments". *Romano v. Romano, supra.*

"The rationale of the rule seems to be that when both parties to a marriage are before the court in a divorce proceeding, the court may adjudicate their respective rights, duties, and obligations involved in the custody of their children, even though the children are not actually before the court. The court enforces its decrees by dealing with the offending parent since, because of its absence, the court cannot deal 'with the person of the infant.' " *Romano v. Romano, supra.*

[4]  The fact that a child has attained majority does not necessitate a contrary holding where the child is mentally and physically disabled.

"Ordinarily the law presumes that when a child reaches twenty-one years of age he will be capable of maintaining himself, and in such case the obligation of the father to provide support terminates. But in North Carolina and a number of other states it has been held that a father is under a legal obligation to continue to provide necessary support to a child who prior to and after reaching the age of twenty-one years is and continues to be insolvent, unmarried, and incapable, mentally or physically, of earning a livelihood. The Supreme Court of North Carolina, in so holding in *Wells v. Wells*, [227 N.C. 614, 44 S.E. 2d 31], created an exception to the general rule and reached a result commensurate with sound public policy and progressive

social principles." 3 Lee, North Carolina Family Law, § 229, p. 54, at p. 60.

"[O]rdinarily the law presumes that when a child reaches the age of twenty-one years he will be capable of maintaining himself, and in such case the obligation of the father to provide support terminates. But where this presumption is rebutted by the fact of mental or physical incapacity, it no longer obtains, and the obligation of the father continues." *Wells v. Wells, supra.*

This rule was codified in 1967 by the General Assembly in G.S. 50-13.8. 3 Lee, North Carolina Family Law, § 229, p. 30 of 1968 Cumulative Supplement.

[3] Neither the record nor the decision of the Supreme Court in *Wells v. Wells, supra,* disclose that the child there involved had been adjudicated an incompetent or that a custodian or guardian had been appointed. The holding was not preconditioned upon such an adjudication. In the instant case, Judge Copeland entered an order under date of 13 March 1968 for a psychiatric examination of David. Judge Hobgood entered an order under date of 1 May 1968 appointing as psychiatrists to conduct said examination the staff of the Psychiatric Department of the North Carolina Memorial Hospital in Chapel Hill. Judge Ransdell entered an order under date of 17 February 1969 in which he made the following finding of fact:

". . . David . . . has continuously been and remains unmarried, insolvent, and so handicapped both mentally and physically as to be incapable of earning his livelihood; that he is in such condition mentally and physically as to require constant supervision, care, attendance and attention and is totally dependent upon the defendant."

He thereupon concluded as a matter of law that:

". . . David . . . is not competent, by reason of mental and physical disability to be self-supporting or to earn his own livelihood and that said David . . . is an incompetent and unemancipated child . . .; that it is in the best interest of the said David . . . that he be placed in the custody and care of his mother, the defendant. . . ."

At the time Judge Ransdell made the finding of fact and conclusion of law, he had before him the report from the Psychiatric Department and five medical affidavits which had been filed with the district court and duly introduced into evidence at the hearing.

This contention is without merit.

[5] The plaintiff's second contention is that the trial judge erred in overruling his demurrer to the defendant's cross-action. It was argued that the defendant failed to state facts sufficient to state a cause of action for abandonment.

> ". . . To state a cause of action under G.S. 50-16 it is necessary to allege (1) the marriage, (2) the separation of the husband from the wife and his failure to provide the wife and children of the marriage reasonable subsistence, i.e., abandonment, *or* some conduct on the part of the husband constituting cause for divorce, either absolute or from bed and board, and (3) want of provocation on the part of the wife. . . ." *Murphy v. Murphy*, 261 N.C. 95, 134 S.E. 2d 148. See 1 Lee, North Carolina Family Law, § 80, p. 302.

> "*Denny, J.*, said for the Court in *Blanchard v. Blanchard*, 226 N.C. 152, 36 S.E. 2d 919: 'It is unnecessary for a husband to depart from his home and leave his wife in order to abandon her. By cruel treatment or failure to provide for her support, he may compel her to leave him. This, under our decisions, would constitute abandonment by the husband.'" *Bailey v. Bailey*, 243 N.C. 412, 90 S.E. 2d 696.

The cross-action stated a cause of action under G.S. 50-16. This contention is without merit.

[6] The plaintiff's third, fourth and fifth contentions are that there was not sufficient evidence to support Findings of Fact Numbers Three and Four. The trial judge complied with the following general rule stated in *Ipock v. Ipock*, 233 N.C. 387, 64 S.E. 2d 283, (although the facts are distinguishable):

> "Consequently, in passing on such motion the judge is expected to look into the merits of the action and determine in his sound legal discretion, after considering the allegations of the complaint and the evidence of the respective parties, whether or not the movant is entitled to the relief sought. . . ."

We have reviewed the record and find no merit in these contentions.

We have likewise reviewed the record in respect to the sixth contention and find no merit. The question of jurisdiction has been dealt with *supra* and further discussion is unnecessary.

[7] The plaintiff's seventh contention is that the trial judge erred in awarding counsel fees *pendente lite* to the defendant, because there was no testimony taken to determine whether he was a wrong-

doer and because there was no finding of fact in the order under date of 17 February 1969 that he was a wrongdoer. It was unnecessary for the trial judge to make findings of fact in this hearing on the cross-action under G.S. 50-16. It is presumed "that the court, for the purposes of the hearing, found that [the plaintiff] had wrongfully abandoned the [defendant], as alleged in the" cross-action. *Southard v. Southard,* 208 N.C. 392, 180 S.E. 665. Judge Ransdell made findings of fact, some of which were set out in his order. A finding of fact that the plaintiff was a wrongdoer was not set out. This, however, did not preclude the presumption that the plaintiff was found to have wrongfully abandoned the defendant.

This contention is without merit.

**[8]** The plaintiff's eighth contention is that the trial judge erred in its conclusion of law because it was not supported by the evidence and because the trial judge lacked express authority to determine the questions of incompetency and visitation rights. Suffice it to say that, since the husband and wife were before the court, visitation rights could be established, regardless of the child's residence. This contention is without merit.

**[3]** The plaintiff's ninth contention is that, since the trial judge had "no authority over the conduct, rights or privileges of David . . ., a citizen and resident of the State of Virginia", it was error to enter the following order:

"[T]hat the plaintiff (defendant?) be and she is hereby given custody and control of David . . . and that the plaintiff may have the said David . . . visit with him at reasonable times; and that the plaintiff also shall have the right to visit said David . . . at his home at reasonable times and under reasonable circumstances."

Based upon the reasoning of *Romano v. Romano, supra,* we hold that this contention is without merit.

**[9]** The plaintiff's tenth contention is that the trial judge erred in entering the following order:

"[T]hat the plaintiff pay to the defendant pendente lite, the sum of Two Hundred and no/100 Dollars ($200.00) per month commencing the 15th day of February, 1969, and on or before the 15th day of each month thereafter for the use and benefit of said David . . . incompetent and unemancipated son of the parties."

It is argued that "[t]his order is impossible of being carried out

since it was rendered on the 17th day of February while $200.00 is required to be paid out on the 15th day of that month". Under the express terms of the order, the plaintiff was required to pay to the defendant $200.00 for the month of February. Although the requirement relates back to the 15th of February, the plaintiff could have complied with the order by making the payment at anytime during the month of February. Unlike the provision for subsequent months, the payment for February did not have to be made "on or before the 15th day".

[10]    It is further argued that the justified expenses for the use and benefit of David is $80.00. "[T]he amount the [plaintiff] is required to pay for the support of his child and for reasonable subsistence of the [defendant] *pendente lite* and for compensation to her counsel, is determinable by the [trial] judge in the exercise of his sound discretion. And in the absence of an abuse of discretion, his decision is not reviewable." *Rock v. Rock*, 260 N.C. 223, 132 S.E. 2d 342. No abuse of discretion has been made to appear.

This contention is without merit.

[11]    The plaintiff's eleventh contention is that the trial judge erred in entering the order under date of 17 February 1969 "for that it is contra to the law, is not supported by substantial and competent evidence and fails to find sufficient and adequate findings of fact and conclusion to answer the issues raised by the pleadings." It is argued that the findings of fact "were attempted but failed to establish the needs of the son and failed to determine the ability of the father. The expenses of the father are not considered, much less established." In respect to the plaintiff's ability to pay, the testimony revealed that his income was $888.65 per month from his civil service annuity and that he owned a twenty-acre tract and a four-acre tract of land. In respect to the needs of David, the testimony of the defendant revealed that the part-time vocational rehabilitation cost $10.00 per week, the psychiatric treatment cost $60.00 for two sessions a month, the dental treatment cost on the average of $5.00 per month, the transportation to and from the vocational rehabilitation school and the psychiatric treatment cost on the average of $15.00 per month, and his clothing cost on the average of $25.00 per month. Mrs. Sooley was also paid $120.00 per month for staying with David. This testimony and the cross-action, which was treated as an affidavit in support of the prayer and motion for relief *pendente lite*, support the order.

This contention is without merit.

**[12]**    The plaintiff's twelfth contention is that the trial judge erred in making the following finding of fact:

> "That although defendant is gainfully employed, her normal expenses are approximately equal to her income, and she is therefore financially unable to pay a reasonable fee to her attorneys."

It is argued that the finding of fact is contrary to the evidence. The defendant testified that the total of her household expenses, personal and those in connection with a trust for the benefit of David, was $1,317.51 per month. She further testified that her income was $1,333.34 per month.

The defendant's testimony indicates that her gross income for 1969 will be $16,000.00, or $1,333.34 per month. Her federal and state taxes and social security are $313.66 per month. Her expenses per month in connection with David include $40.00 for part-time vocational rehabilitation, $60.00 for psychiatric treatment, $5.00 for dental treatment, $15.00 for transportation costs, $25.00 for clothing, and $120.00 for an attendant. These total $265.00 per month. In addition, her expenses per month include $150.00 for food, $15.00 for telephone, $50.00 for personal expenses such as lunches, cleaning and clothing, $37.50 for dental work, $7.00 for Medicare, $10.00 for car insurance, $30.00 for transportation and car maintenance, $10.00 for hospitalization insurance policy, $13.00 for accidental death policy, and $17.00 for other insurance. These total $339.50. Her expenses per month in connection with a trust created for the benefit of David include premiums of $35.50, $18.99, $269.71, $16.67, and $4.00. These total $344.87. Therefore, her expenses for each month, according to these figures, equal at least $1,263.03. The difference between her monthly income of $1,333.34 and her monthly expenses of $1,263.03 is $70.31.

In his order, the trial judge found that "her normal expenses are approximately equal to her income." He did not find that they were exactly equal. This contention is without merit.

The thirteenth contention is likewise without merit and further discussion of the point raised is unnecessary.

**[13]**    The plaintiff's fourteenth contention is that the trial judge erred in entering the following order:

> ". . . that the plaintiff pay to Joyner, Moore and Howison, counsel for the defendant, the sum of One Thousand Five Hundred Dollars ($1,500.00) to apply upon attorneys' fees incurred by defendant to the date of this order, such sum to be paid on

or before the 15th day of February, 1969, or at such other time and under such other terms and conditions as may be satisfactory to said counsel for defendant."

Since the order was dated 17 February 1969, the plaintiff could not have complied with the provision for payment "on or before the 15th day of February". However, he could have fully complied with the alternative provision for payment. In so doing, it is not to be presumed that counsel for defendant would have exercised the power to determine the time and the terms and conditions of payment to the detriment and prejudice of the plaintiff.

It is argued that "[t]he evidence presented does not justify ordering counsel fees for the defendant in that . . . her income and financial reserves are amply sufficient to pay her own fees". In view of her monthly expenses, the defendant was not able to pay a reasonable fee to her attorneys.

It is further argued that "[t]he evidence presented does not justify ordering counsel fees for the defendant in that . . . the plaintiff has not been held to have abandoned her". However, there is a presumption that the trial judge found that the plaintiff abandoned the defendant. *Southard v. Southard, supra.*

In respect to the amount of counsel fees *pendente lite,* the plaintiff argued that $1,500.00 was excessively liberal. In support of his position he cited *Schloss v. Schloss, supra.* The Supreme Court there stated:

"[L]ess than two months elapsed between the separation and the entry of the order. The order directed the husband to pay $2,500 to the wife's counsel 'as a fee for services rendered *to date.*' (Emphasis added.) There is nothing to indicate that the wife consulted her counsel prior to the husband's departure from the home. No evidence was introduced at the hearing by the plaintiff except her verified complaint, a short affidavit by her with reference to the effect of the full allowance prayed for upon the husband's income tax liability, and a copy of the joint income tax return. The entire evidence for the defendant consisted of his counter affidavit and three very short affidavits of other persons. Nothing in the record indicates that extensive preparation for the hearing was necessary or was made."

In the instant case, the record indicates that extensive preparation for the hearing was necessary and was made. Much of the preparation was necessitated by the mental and physical condition of David. In his order, Judge Ransdell made the following finding of fact:

"That the matter has been placed on the trial calendar numerous times, finally being tried at the January 1969 Term of Wake County District Court, resulting in a mistrial, and that counsel for defendant has represented her throughout these proceedings."

The Supreme Court further stated in *Schloss v. Schloss, supra:*

"The [wife] alleges in her complaint that she is the owner of a $48,000 residence which is free of encumbrances, she owns a new automobile and has over $13,000 in bank accounts and other investments. When to these resources there is added by the court's order an income from her husband at the rate of $18,000 per year, it cannot be said, in the absence of any findings of fact, that she is financially unable to pay a reasonable fee to her attorney and so is unable to employ counsel to represent her in her litigation with her husband."

In the instant case, the monthly expenses would prevent the defendant from meeting the plaintiff, as litigant, on substantially even terms without an allowance of counsel fees *pendente lite.* Judge Ransdell found as a fact that the defendant's normal expenses were approximately equal to her income.

This contention is without merit.

The fifteenth contention is likewise without merit and further discussion of the points raised is unnecessary.

Affirmed.

BROCK and MORRIS, JJ., concur.